## Bonnell vs. Roane.

It is not necessary that the purchaser of land sold for taxes, should be in the actual possession of the land in order to entitle him to file a bill for confirmation of his title.

In a proceeding under the statute (*Gould's Dig.*, *chap.* 170), for confirmation, when the tax deed is "in the usual form," it is to be taken as *prima facie* evidence, not merely of the qualification of the officer to act as such, but that the steps prerequisite to the sale, and which constitute the authority of the officer to sell, have been regularly taken, as well as of the description of the land and the price at which it was purchased; and the parties impeaching the deed must prove irregularities in order to invalidate the sale.

The collector's deed embraced lands belonging to various persons, stating the gross sum at which they were sold, but that the tracts were severally assessed in the names of the owners, severally advertised for sale, severally offered and sold for the taxes and costs charged thereon. The bill for confirmation alleged that the lands were separately sold and purchased for the taxes due thereon, etc. At the hearing evidence was admitted to sustain the allegations of the bill in aid of the deed.

Under the Territorial statute (*Steel & McC. Dig.*, title *Revenue*, *p.* 470), if the tax payer was a resident of the county, the collector could not proceed to levy upon and sell his goods or land, until after demand and refusal, or neglect to pay the taxes.

A collector's deed, "*in the usual form*," within the meaning of the statute, is a deed which substantially recites the material steps which the law requires to constitute a valid tax sale, including a proper description of the land, the price paid, with words granting the lands to the purchasers, etc.; and if it fail to recite any fact material to the sale, the party relying on the deed must aid the omission by evidence *aliunde*.

The failure on the part of the defendant in a chancery proceeding to respond, in his answer, to an allegation not charged, nor presumed to be within his knowledge, is not an admission of the truth of the allegation. (14 *Ark*. 654; 15 *Ib*. 194).

*Appeal from Jefferson Circuit Court, in Chancery.*

Hon. Theodoric F. Sorrells, Circuit Judge.

WATKINS & GALLAGHER, for the appellant.

The most liberal view that can be taken of the case at bar, for the complainant, is, that it is a proceeding for confirmation of title, under the act of November 3d, 1836, which provides, that in that proceeding, a sheriff's deed shall be sufficient evidence of the authority under which the sale was made, the description of the land, and the price at which it was purchased. This provision is construed in *Overman vs. Parker*, 18 *How*. 137, to mean, when applied to this case, that here the deed is *prima facie* evidence that Stanislaus Dardenne sold this land, as collector of Jefferson county—that he sold the " *east fractional of section* 1, *township* 5, *south range* 10 *west, containing* 276 81-100 *acres;*" but for what price, the deed affords no evidence of any grade, because this tract, and others, are put down as having been sold for a price, amounting in the whole to the sum of $115 00 taxes, due on the whole. As to these two facts, viz: the authority under which this sale was made, and the description of the land sold, they are to be considered as sufficiently proven in this case by the recitals of the deed, to put the assailing party to the labor of adducing proof against them, if he could destroy their force; but as to *every other fact* necessary to constitute a valid sale, those facts must be proven by the purchaser, by other evidence than the mere recitals in the deed: and, to fail in any *single one* of these facts, is fatal to his case.

Admitting this to be the true construction of the law, this case has scarcely a single point to stand on.

There is no proof of a valid assessment. None of the advertisement. None that the land was sold at the time, place, and in the manner prescribed by law. None that the sum for which it was sold was the sum of the taxes, etc., justly due on it. This could not be proved by the deed, because the taxes due on this tract were included in the aggregate sum of the taxes due on forty other tracts. The sum of the taxes, for which it was sold, was not proved by any evidence at all; and this *single omission* is fatal to the whole case. None that the owner of the land had no personal property in the county·

None that notice was given of the filing of the list, and that owners could have an opportunity of correcting its errors.

The general doctrine is, that " The recitals in a tax deed are not evidence against the owner of the property; but the facts recited must be established by evidence *aliunde;* nor is the conveyance itself, because of its solemnity, or upon any conceivable principle, *prima facie* evidence that the pre-requisites of the law had been complied with by the various officers of the law who conducted the proceedings. The fact that they were regular must be proved, and the *onus probandi* rests, in all cases, on the purchaser, or those claiming under him. He must show, affirmatively, step by step, that every thing has been done which the statute makes essential to the due execution of the power conferred on the officers." *Blackwell on Tax Titles, p.* 93, *and cases there cited.*

The deed shows that there were forty tracts, more or less, sold for the aggregate sum of $115. The law requires each tract to be listed and sold *separately. Andrews vs. Senter,* 32 *Maine* 394; *Morton vs. Harris,* 9 *Watts* 319.

2. Because the statute by its terms restricts the remedy afforded by this proceeding for confirmation to those " purchasers, etc., *in possession*."

SEC. 1. The purchasers, etc., may protect themselves from *eviction,* or from any responsibility as *possessors of the same,* by pursuing, etc.

SEC. 2. The notice is to declare the nature of the title under which the land " *is held.*"

SEC. 6. " The decree of confirmation shall operate as a complete *bar* against any person claiming said land."

We hold the policy and intent of the statute and its whole purview to be, that the petitioner seeking a confirmation must have actual possession of the land in person or by tenant; or at least constructive possession of the land, which might be in case, there be no actual adverse possession; and that if there is, as in this case the complainant admits, an *adverse posses-*

*sion by one claiming the legal title*, he must first resort to *eject-ment*.

A complainant in equity, as at law, can only recover on the strength of his own title, and he is not in condition to assail the title of the defendant, unless he shows a right in himself to the land in controversy. *Cunningham vs. Ashley & Beebe*, 7 *Eng*. 296.

CUMMINS & GARLAND, for the appellee.

The tax sale, under which the appellant claims, was merely and absolutely *void*. That is too well established in this Court to need argument.

1st. Because the taxes on the land now in controversy, were, in that year, taxed to the party, who was shown by the records to be owner thereof, *and the taxes were paid by him. Merrick & Fenno vs. Hutt*, 15 *Ark*. 331.

2d. Because the land, in that year, taxed in the name of Hart, Labatt & Co., was not *assessed, taxed, advertised, sold* or *conveyed*, by any known description, whereby its identity ever could be fixed or ascertained. *Patrick vs. Davis*, 15 *Ark*. 363; 5 *Scam*. 481; 1 *N. H*. 93; 6 *N. H*. 421; 13 *J. R*. 97, 538; 2 *Cain R*. 61; 10 *Georg*. 77; 5 *Blackf*. 51.

The sheriff's deed to Roane, was perfectly good on its face.

The objections taken to Roane's title, were merely frivolous, and were proven to be unfounded.

He had acquired a perfect title, not only by the five years act, but also by the general act of limitations, before Bonnell entered upon the land.

Defendant having nothing but a fraudulent pretence of title, stood in no position to object to Roane's. 1 *Ark. Rep*. 472.

Below it was contended that the party supposing he had dis-covered some recitals in Roane's deed from the sheriff, which might be stretched to show the tax sale was irregular—Roane must stand or fall on the *deed*, and could not show, in point of fact, that the proceedings were regular. 10 *Gratt*. 421.

If such estoppel were *mutual*, there might be a show of fairness in it.

It is the officer's duty to *recite* truly the facts. If he *omits* to recite the necessary facts, they can be proven. 13 *Ark. R.* 242; 15 *Ark.* 331; *Bank of Utica vs. Menereau,* 3 *Barb. Chan. Rep.* 578, *etc.;* 8 *Ohio Rep.* 135; 10 *Ohio Rep.* 437; 10 *J. R.* 386; 18 *J. R.* 10; 3 *Phil. Ev.* 1291, 1292, *and cases collected;* 12 *Ill.* 177, 414; 22 *Verm.* 398, 569; 19 *Verm.* 77; 17 *Vt.* 121; 5 *Vt.* 9, 13. 609; 17 *Vt.* 98.

*Sections* 111, 112 *and* 113, do not require any recitals to be inserted in a tax deed, any more than such recitals are required by the auditor. A deed by the sheriff, in the precise form adopted by the auditor, would be good, without any particular recital of facts. 10 *Gratt.* 421.

Such deed, therefore, stands on the same footing with any other official deeds. As the above authorities show, no error, mistake or omission of the officer, could injure a purchaser—if, in truth, the authority is proven to act. There is a presumption, in law, or created by the statute, that the officer has done his duty, till the contrary appears. 6 *and* 7 *Ohio R.* 500, *etc.*

The recitals would be a mere reference to public official records, or public official acts, and could be proven, without at all varying or changing the deed, operating in itself a conveyance. 3 *Phil. Ev.* 1420 *to* 1425, *and cases cited; and* 1430; 11 *Wend.* 427; 9 *Cowen* 182; 1 *Wright* 213; 5 *Cow.* 529; 10 *J. R.* 381.

The party objects to the remedy adopted. We can discover no objection to it. *Yancey vs. Hopkins,* 1 *Munf.* 419.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

This was a bill to quiet title, etc., filed by John S. Roane in the Circuit Court of Jefferson county, on the 7th of September, 1852, against Stephen Bonnell, Barnett B. Hart, Abram C. Labatt and Esther Hart, etc.

Decree in favor of Roane, and Bonnell appealed.

Roane claims the land in controversy under a tax title.

Bonnell claims it under a decree confirming a tax title, etc., which the bill alleges to be fraudulent and void, and prays it to be so declared, and the Court below so decreed.

We will first consider the validity of Roane's claim to the land. If he had no title, he had no cause to impeach Bonnell's.

Roane's title, as made out by the bill, is, in substance, as follows:

In the year 1836, one Atkinson located a *lovely claim*, in the land office at Little Rock, on a tract of land described upon the plats, as the east fractional (*meaning east fr. half*) of section one, in township five, south of range ten west, containing 276 81-100 acres, situated in Jefferson county. He obtained the Register's certificate therefor, and subsequently, as complainant had been informed, a patent. That the land was assessed to Atkinson for the year 1837, and he failing to pay the taxes, having no personal property in the county, and being a non-resident, the collector of Jefferson county proceeded regularly to advertise and sell the land for the taxes, etc., charged thereon; and Roane became the purchaser thereof at the sale on the first Monday of November, 1837. He obtained a certificate of purchase, and on the 13th of September, 1840, after the lapse of the time for redemption, the collector executed to him a deed for the land, which, on the 14th of October following, was duly acknowled in open Court, and recorded.

Under the deed, he had possession of the land, and paid the taxes thereon until about the year 1841, or 1842, when he sold or conveyed it to Ewing H. Roane, who owned, possessed and claimed it, and paid the taxes thereon until the 25th February, 1851, when he re-conveyed it to complainant (John S. Roane).

That the land had been continuously claimed by complainant and said Ewing H., who held under him, from the time of the tax sale until the filing of the bill, and the taxes charged thereon regularly paid.

1. It is averred in the answer of Bonnell, that Roane was not, at the time of the filing of the bill, or at any previous time,

in the actual possession of the land, under his tax deed, or any other title: and it is, therefore, insisted that he had no right to proceed under the statute for confirmation of his title, etc.

The statute provides that the purchasers, etc., of lands at sales made by sheriffs, the auditor, or at sales made by the order, decree or authority of any Court of record, " may protect themselves from *eviction* of lands so purchased, or from any responsibility as possessors of the same, by pursuing the rules hereinafter prescribed."

The statute then proceeds to provide for confirmation of titles to such lands, after public notice,. etc. *Gould's Digest, chap.* 170.

To hold that the purchaser must be in the actual possession of the land described in his deed, in order to entitle him to file a bill for confirmation, would greatly contract the scope and usefulness of the statute, as will be apparent, when it is considered that the wild and unenclosed lands constitute the prevailing class of lands in this State. Doubtless, in most instances, our land-holders are in the actual possession of but the smaller portion of the lands embraced in their deeds. Such a construction of the statute would also be a departure from the course of decisions in this country in reference to remedies relating to lands. See *Ledbetter vs. Fitzgerald,* 1 *Ark.* 452; *Ib.* 465; 18 *Ib.* 287; 12 *Wend.* 678.

The object of the statute, doubtless, was to enable purchasers of lands at public sales to establish and confirm the regularity of their titles by a solemn decree of a Court of Chancery, in order that they might safely enter upon, improve and cultivate them, or put them in the market without clouds upon the title, and invite others to purchase and improve them. See *Parker vs. Overman,* 18 *How.* 140.

Nor has it been the practice, under the statute, so far as we are advised, for the Courts to require the complainant, seeking confirmation of title, to show that he was in the actual possession of the land, in order to maintain his bill.

2. We are next to determine what effect is to be given to

Roane's tax deed as evidence of the regularity of his title to the land in this proceeding.

The statute declares that " a sheriff's or auditor's deed, given in the usual form, without witnesses, shall be taken and considered by the Court as *sufficient evidence of the authority under which the sale was made*, the description of the land and the price at which it was purchased." *Sec.* 5.

What was intended by the clause in the above section, that the deed should be taken as sufficient evidence of the *authority under which the sale was made?*

It is insisted by the counsel for Bonnell, that the clause means, simply, that the deed shall be considered as *prima facie* evidence, that the person who made the sale was, at the time, the duly qualified collector, or auditor, as the case may be, and that the purchaser must go back of the deed and prove that all the steps requisite to a valid sale have been taken by the officer.

But this would be an exceedingly narrow construction of the act, and at war with the theory of tax sales, as established in this State. The qualification of the officer to act as such, is but one of a number of items which make up the authority of the collector to sell lands for taxes. He acts not under a general but a special and limited power in making the sale. If at the moment of the sale he has substantially taken all the steps which the statute prescribes as conditions precedent to the making of the sale, his *authority* to sell the land of the taxpayer in default is complete; otherwise he has no *authority* to make the sale, however regularly he may have been installed into office. *Hogins vs. Bashears*, 13 *Ark.* 250; *Patrick vs. Davis*, 15 *Ark.* 366.

We must suppose, therefore, that when the Legislature declared that the deed should be taken as sufficient evidence of the *authority* under which the sale was made, they used the word " *authority* " in the sense indicated.

And we therefore hold that in a proceeding under the statute, for the confirmation of title, when the tax deed is " *in the*

8

*usual form,*" it is to be taken as *prima facie* evidence that the steps, pre-requisite to the sale, and which constitute the *authority* of the officer to sell, have been regularly taken, as well as of the description of the land, and the price at which it was purchased, and that the party impeaching the deed must prove irregularities in order to invalidate the sale.

The correctness of this conclusion may be supported by considering the evil which the Legislature designed to remedy by the statute. At the time the act in question was passed (*Nov. 3d*, 1836), the prevailing doctrine was, that where a party relied upon a tax title, his deed was evidence of nothing until he went back of it, and established, by other evidence, that all the steps required by law to constitute a valid sale of the land for taxes, had been regularly taken. And after the lapse of years, and perhaps the death or removal of witnesses, the purchaser was put to the difficult task of proving matters which occurred *in pais*, in order to maintain his title. The design of the statute under consideration was, doubtless, to remedy this evil, and make the deed, when regular upon its face, *prima facie* evidence of the validity of the sale, etc. And this construction of the statute accords with the legislative policy adopted in this State in reference to tax deeds generally. See *Merrick et al. vs. Hutt,* 15 *Ark.* 338.

What the statute intended by the deed being " in the usual form," will be considered below.

3d. It is furthermore objected, in the answer of Bonnell, that it appears from the face of Roane's deed that the collector sold, and he purchased, lands belonging to various persons for a sum in gross, and that the lands were not sold in separate tracts.

It appears from the deed, that Roane purchased a number of tracts of land at the sale, belonging to different persons, and among them the tract in controversy; and that they were all conveyed to him by the same deed. The deed does not recite the amount of taxes assessed upon each tract, but it distinctly states that the tracts of land described and conveyed to Roane

were severally assessed to their respective owners, severally advertised for sale, severally offered, sold and purchased by Roane for the taxes and costs charged thereon. It is true that the deed does not recite the amount of taxes, etc., charged upon each of the several tracts, but states the sum in gross due upon all of the lands, and for which Roane purchased them. But in aid of the deed it is alleged in the bill, that the tract of land in question was separately sold, and purchased by Roane, for the taxes, etc., due thereon, and the amount thereof is stated. And at the hearing of the cause Roane produced, and read in evidence, the certificate of purchase, executed to him, by the collector, at the time of the sale, for this tract separately, which states the amount of taxes for which it was sold. He also read the depositions of two witnesses, conducing to prove that the collector offered, by separate tracts, the lands sold by him for taxes at the sale at which Roane purchased. To rebut this evidence in aid of the deed, there was no opposing testimony introduced on the part of Bonnell.

4. The next objection to the deed, made in the answer of Bonnell, is, that it does not appear upon its face whether *Atkinson*, in whose name the land was assessed and sold, was a resident or non-resident, or that any demand was made upon him for the taxes due upon the land, before the sale, etc.

It is true that the deed is silent as to the residence or non-residence of Atkinson, and as to a demand upon him by the collector, for the taxes, before the sale. The bill alleges that he was a non-resident; the answer of Bonnell makes no response to this allegation, and there was no evidence read upon the hearing as to this point.

The land was assessed and sold in the year 1837, and the validity of the sale must be tested by the statutes then in force.

By act of November 7th, 1836, passed after the formation of the State government, entitled "*An act to provide for a permanent system of revenue for the State of Arkansas,*" (*Acts of* 1836, *p.* 188,) the rate of taxation is fixed, and the lands and other

property to be taxed designated (*secs.* 1, 2, 3); the sheriff of each county is made assessor and collector thereof (*sec.* 3); and it is made the duty of the assessor to take and return an accurate list of all lands, etc., liable to taxation in his county, with the value and description thereof, etc.; and if any person failed to give in his list, etc., it was made the duty of the assessor to ascertain the lands, etc., belonging to the person so failing, etc., and to assess the same at double their value, etc. (*sec.* 5). The collectors were required to collect and pay over the taxes in accordance with existing laws. (*Sec.* 8.)

In this act the assessors are not required to discriminate between the lands of residents and non-residents, in making the lists.

The laws then in force regulating the collection of taxes, and the sale of lands, etc., therefor, are to be found in *Steel & McC. Dig.*, title "REVENUE," *p.* 470, *etc.*

If any person, charged with taxes, neglected or refused to pay the same to the collector, *when demanded*, he was empowered to distrain and sell the goods of the defaulter, on ten days' notice, to satisfy the taxes, etc. (*Sec.* 26.)

In all cases where the collector could not find personal property upon which to levy and make distress for the payment of the taxes, he was empowered to sell the land assessed to the party in default, on the first Monday in November, after sixty days' notice, etc., to give the purchaser a certificate of purchase, and, after the expiration of the time allowed the owner to redeem, a deed, etc. (*Sec.* 27.)

This statute makes no discrimination between the lands of residents and non-residents, as to the time of sale, the right to redeem, etc.

But in the process of collecting the taxes, the residence or non-residence of the tax-payer was, in one respect, a material matter. If he was a resident of the county, the collector could not proceed to levy upon and sell his goods or land, until after *demand*, and refusal or neglect to pay the taxes.

If he was a non-resident, no demand could be made upon

him, and therefore the statute could not have intended that, as to non-residents, any demand should be made.

The bill, as above shown, alleges that *Atkinson* was a non-resident of Jefferson county in the year 1837, but his non-residence is not a fact charged in the bill to be within the knowledge of Bonnell, nor is it such a fact as may be presumed to have been within his knowledge; hence his failure to respond to the allegation, in his answer, is not an admission of its truth. If Roane had desired him to respond to this allegation, he should have excepted to the answer. *Blakeney vs. Ferguson et al.*, 14 *Ark.* 651; *Hardy vs. Heard et al.*, 15 *Ib.* 194.

It follows that the omission of the deed to recite a demand, by the collector, upon *Atkinson* for the taxes, before proceeding to advertise and sell the land, or that he was a non-resident, is not aided by the pleadings, or proof in the cause.

The demand, or such excuse for it, being material to the validity of the sale of the land for the taxes, is the collector's deed to be taken as *prima facie* evidence of the demand, or the excuse, when neither is recited therein? And this brings us to the important question, above deferred, as to what the statute intended by the deed being " *in the usual form.*"

" A sheriff's or auditor's deed, *given in the usual form, etc.,* shall be taken, etc., as sufficient evidence of the *authority under which the sale is made, the description of the land,* and the price at *which* it was *purchased.*"

The Territorial statute, under which the land in question was sold for taxes, and conveyed to Roane, does not prescribe the form of the deed to be made by the collector to the purchaser, but simply provides that he shall execute to him a " *deed in due form of law,*" which shall vest in him the title to the land. *Steel & McC. Dig.*, *p.* 472, *sec.* 29, title " REVENUE."

Roane's deed recites the assessment of the land in the name of Atkinson, the failure to pay the taxes, want of personal property, the advertisement, sale, purchase by Roane, and grants the land to him, in consideration of the premises, etc. It recites that he paid the purchase money for all of the tracts

bought by him at the sale, but does not recite the price paid by
him for the tract in controversy. The statute says that a deed
*in the usual form* shall be evidence of the *price at which the
land was purchased.*

But Roane's deed does not recite the price paid by him for
the land, furnishes no evidence of the fact, and as to such
fact cannot be considered a deed *in the usual form,* within the
meaning of the statute.

So the statute declares that a deed *in the usual form* shall
be sufficient evidence of the *description of the land, etc.* The
collector's deed, under which Bonnell claims title to the frac-
tional half section of land in controversy (with the other
tracts) recites the assessment, and sale to him of a tract of
land, described as " 640 *acres of land adjoining Taylor's &
Moseby's Landing, in the said county of Jefferson.*" Surely, on
the hearing of his bill to confirm title, the Court could not
have taken so vague a recital as sufficient evidence of the
*description of* the particular tracts of land which he claimed
under the deed; and, therefore, such a deed could not be re-
garded as *in the usual form,* within the meaning of the statute,
as to the description of the land. (*Patrick vs. Davis,* 15 *Ark.*
363.)

These examples serve to illustrate the conclusion to which
we must unavoidably come, that a collector's deed cannot be
regarded as sufficient evidence of a fact which it in no way
recites; and that a collector's deed *in the usual form,* within
the meaning of the statute under consideration, is a deed which
substantially recites the material steps which the law requires
to be taken to constitute a valid tax sale, including a proper
description of the land, the price paid, with words granting the
lands to the purchaser, etc. And that if the deed fails to recite
any fact material to the validity of the sale, the party relying
on the deed must aid the omission by evidence *aliunde.* If the
deed be void for a violation of some material provision of the
law, in the process of the sale, affirmatively appearing on its

face, as in *Hogins vs. Brashears*, 13 *Ark.* 242, of course it could not be aided by other evidence upon the trial or hearing.

And though this Court has decided that the deed of the auditor, made under existing laws, need not contain recitals (*Merrick & Fenno vs. Hutt*, 15 *Ark.* 339); yet, in relation to the deeds of collectors, our decisions have manifestly tended to the conclusion above announced. *Gossitt et al. vs. Kent et al.*, 19 *Ark.* 603; *Jordan vs. Bradshaw*, 17 *Ib.* 106; *Patrick vs. Davis*, 15 *Ib.* 363; *Pillow vs. Roberts*, 7 *Eng.* 822.

It follows that Roane's deed omitting to recite a matter material to the regularity of the sale of the land for taxes, by the collector, and he having failed to aid the deed by proof upon the hearing as to this matter, he fell short of making a case for confirmation of title under the statute.

No doubt the tax deed of Bonnell was void because of the advertisement, sale, and conveyance of the land, by the vague and uncertain description, above referred to; and because of the further fact that he claims to have purchased the land for the taxes due upon it for the year 1845, when it was proven upon the hearing that the land was assessed to Ewing H. Roane, and the taxes for that year paid by him. But whether the decree, obtained by Bonnell, confirming his title to the land, was procured by fraud, and therefore void as to Roane, it is not necessary to decide in this case, as he failed to make out his own title upon the hearing.

The decree of the Court below is reversed, and the cause remanded with instructions to dismiss the bill, as against Bonnell, he being the only party that appealed from the decree.

Absent, Mr. Justice RECTOR.