## WALLACE VS. BROWN.

If a collector proceeds to sell land after the taxes charged upon it have been paid, the sale is without power and a fraud upon the owner's rights; and this fraud enters into and vitiates a decree of confirmation under the statute; and this court would be slow to hold that the owner, having no actual notice of the proceedings to confirm, could not vacate the decree and cancel the deed of the purchaser in a direct and appropriate proceeding for that purpose:

But when such a decree is offered in evidence in a collateral suit, the owner of the land will not be permitted to go behind the decree, introduce evidence of the payment of the taxes before the sale, and for that reason cause the decree to be treated as null and void.

*Appeal from Crittenden Circuit Court.*

Hon. George W. Beazley, Circuit Judge.

Fowler & Stillwell, for appellant.

Mr. Chief Justice English delivered the opinion of the Court.

Brown brought an action of ejectment against Wallace for a tract of land. On the trial before the court, sitting as a jury, it was admitted by the parties that the plaintiff purchased the land at a tax sale made by the collector of Crittenden county, for the taxes charged thereon, obtained the collector's deed, and that his title was afterwards confirmed by decree of the court of chancery under the statute. That the defendant was the owner of the land in fee at the time of the sale, and prior to the sale paid the taxes for which the land was sold, had the collector's receipt therefor, and was in possession of the land when the suit was commenced.

Upon this agreed statement of facts, the court found for the plaintiff, refused a new trial, and the defendant excepted and appealed.

The decree of confirmation does not appear in the record, but we understand from the admission of the parties, that it was regularly obtained in conformity with the provisions of the statute. The grave and difficult question is therefore presented, whether the decree, being introduced in aid of the plaintiff's title in ejectment, should have been treated as null and void, on its appearing that the taxes were paid before the sale of the land.

It has been well said, " that the delinquency of the owner to pay the taxes, is the essential fact upon which the power of sale rests." The right to sell is founded on the non-payment of the tax. If the tax be paid before the sale, the lien of the State is discharged, and the right to sell no longer exists. Where the owner has performed all of his duties to the government, no court will sanction, under any circumstances, the forfeiture of his rights of property. The law was intended to operate upon the unwilling and negligent citizen alone. The

legislative power extends no further. The sale involves an assertion by the officer that the taxes are due and unpaid, and the purchaser relies upon this, or on his own investigations, and his title depends upon its truth. The title of the purchaser is *contingent*, so far as it may be affected by proof establishing the fact that the tax has been paid before the sale was made. This is an *implied condition*, annexed to every grant of this kind, founded on a sound construction of the law, the power of the government in collecting taxes, and the principles of natural justice. Therefore, every purchaser takes a deed subject to the condition that the taxes have not been paid; and if his title is defeated, he must look to the government for that relief which such a case may require." *Black. on Tax Titles*, 484; *Gaylord vs. Scarff*, 6 *Iowa R.* 184; *Jackson vs. Moore*, 18 *John. R.* 441.

It follows that the sale by the collector, in this case, after the payment of the taxes charged upon the land, was null and void, and the deed executed by him to the purchaser was, of itself, as a muniment of title, worthless.

But does it also follow that the decree of a court of competent jurisdiction, confirming the title of the purchaser, is to be treated as null and void when introduced in a collateral proceeding in aid of the title?

It has been said that that which is void cannot be confirmed; but if this be true in relation to tax sales, the statute providing for the confirmation of tax titles is of no utility. Sales under execution may be void or voidable; but according to our theory of tax sales, they are void or valid, and there is no intermediate ground. If the sale is made substantially in conformity with the provisions of the statute, it is valid, but if the statute be not followed in any matter material to the sale, it is void. For example, if the sale be made upon the wrong day, (*Hogins vs. Brashears*, 13 *Ark.* 249,) or if the land is not advertised for sale, or be misdescribed in the advertisement, (*Patrick vs. Davis*, 15 *Ark.* 363) or where no demand is made of the resident tax payer of the taxes charged upon the land before sale, (*Bon-*

*nell vs. Roane*, 20 *Ark*. 114.) If the sale be regular, and the title consequently valid, the purchaser does not need the aid of the statute; and if the sale be irregular and therefore void, and cannot be confirmed and made valid, by decree under the statute, it follows that the statute is useless.

The statute declares that " the judgment or decree of the court confirming said sale, shall operate as a complete bar against any and all persons who may thereafter claim said land in consequence of *informality*, or *illegality* in the proceedings; and the title to said land shall be considered as confirmed and complete in the purchaser thereof, his heirs and assigns forever, saving however to infants, etc., etc. *Gould's Dig. Ch.* 170, *Sec.* 6.

Where the owner of the land neglects or refuses to pay the taxes charged thereon, and is in default to the government, he must, at his peril, look to the consequences of his default, and if he permits the land not only to be sold, but suffers the purchaser to procure a decree, under the statute, confirming the sale, and there is no fraud in procuring the decree, its effect is to cure errors and informalities in the sale, and to bar his right to question the title of the purchaser on account of such irregularities.

But where the owner has paid the taxes upon his land, and is in no default, his position is unlike that of the defaulting taxpayer. He may justly conclude that he is in no legal peril of having his land sold for taxes which he has paid, and is not expected or required to look to the newspapers to see if his land is advertised, or to attend the collector's sale to ascertain whether it is offered for sale. If, therefore, the collector proceeds to sell his land after he has paid the taxes charged upon it, it is not only a sale without power, but is, in law, a gross and most flagrant imposition and fraud upon his rights; and this fraud we can but think, enters into and vitiates a decree of confirmation, obtained against him under the statute; and where he has had no actual notice of the proceedings to confirm, or opportunity of making a defence, we should be slow to conclude

that he could not vacate the decree, and cancel the deed of the purchaser in a direct and appropriate proceeding for that purpose.

But the question recurs, when such a decree is offered in evidence in a collateral suit, is the owner of the land permitted to go behind the decree, introduce evidence of the payment of the taxes before the sale, and for that reason alone cause the decree to be treated as null and void?

Whether the appellant had actual notice of the proceedings to confirm in this case, and failed to defend, or made an unsuccessful attempt to defend, does not appear from the agreed statement of facts contained in the bill of exceptions. But to put the case on the most favorable ground for him, we will suppose that the decree was taken by default upon the public notice provided for by the statute. The land being in Crittenden county, the decree was doubtless obtained on the chancery side of the Circuit Court for that county, which is a court of general jurisdiction, and competent to render the decree.

It was held in *Borden et al. vs. State*, 6 *Eng*. 519, and has been again and again re-affirmed by this court, that the judgment of a court of general jurisdiction, when collaterally drawn in question, was not to be treated as void, its jurisdiction of the subject matter appearing, and though since the decision in Borden's case, this court has, in several instances, pronounced the judgments of such courts to be void, yet in no instance has it intended to overrule or depart from the doctrine of that case.

Thus in *Cossit et al. vs. Biscoe*, 7 *Eng*. 95, where the Probate Court gave judgment allowing and classing a claim against an estate, at one term, and at a subsequent term attempted to set aside the judgment, and reclass the claim; and it was held that the first judgment was final, exhausted the jurisdiction or power of the court over the subject matter, and that the judgment rendered at the subsequent term was null and void.

So in *Cheek et al. vs. Pugh*, 19 *Ark*. 576, where in entering judgment against a party to the suit, the names of persons who were not sued were included, and judgment entered against

them also; and it was held that the judgment as to them was void, because there was no proceeding before the court upon which the judgment against them could be based.

And in *Brumley vs. The State*, 20 *Ark.* 77, where the Circuit Judge attempted to hold court at a time other than that fixed by law, and rendered a judgment against Brumley, it was held that the proceedings were *coram non judice*, and void.

All of these cases are referable to the same principle; that the court was without legal power to act upon the subject matter.

The question of jurisdiction of the subject matter is always open, and whether a judgment is called in question collaterally, or in a direct proceeding, it may be shown, if such be the fact, that the court which rendered the judgment was without jurisdiction to act upon the subject matter of the suit, and consequently that the judgment is void. *Williams vs. Harris et al.*, 4 *Sneed* 534; *Lessee of Bargers vs. Jackson*, 9 *Ohio* 163.

It has been held in Ohio that the judgment of the county court condemning the land of a delinquent tax-payer to be sold for the taxes charged thereon, under a statute of that State, precludes enquiry into errors or irregularities occurring prior to the judgment (8 *Ohio* 539; *Ib.* 164, 160,) but where the court proceeded to condemn land for the payment of taxes, which was not within the limits of its territorial jurisdiction, the judgment was held to be void, 9 *Ohio* 163. A like decision was made by the Supreme Court of Tennessee, in *Williams vs. Harris, et al.*, 4 *Sneed* 332, where the judgment condemning the land was rendered by the Circuit Court, under a statute of that State.

In these cases, the courts were proceeding *in rem*, and the lands, the subject matters of the suits, not being within their jurisdictions, their judgments were declared null and void in collateral proceedings.

So in the case before us, the proceeding was *in rem*, to confirm a sale of land made by the collector of taxes, the land was within the territorial jurisdiction of the court, the court had

power over the subject matter, and the decree was rendered, as we must suppose, upon a proper application, and after the public notice provided for by the statute.

The precise question now before us, came before the Supreme Court of Iowa, under a statute similar to ours, in *Gaylord vs. Scarff*, 6 *Iowa R.* 180, and the court, after declaring that the sale of the land after the payment of the taxes was null and void, proceeded to hold: "that after decree, where the court is shown to have jurisdiction, we think, the owner is concluded, and cannot be permitted to prove the payment. Any other construction would take from the judgment that conclusiveness, which the law expressly says shall be given to it. As the non-payment is the essential fact upon which the power to sell vests, the decree necessarily includes within it the finding of that fact, and in the absence of fraud, must be conclusive." In this case the decree came before the court in a collateral proceeding.

The existence or validity of the debt or demand, upon which the suit is founded, at the time of rendering the judgment or decree, is not the criterion of jurisdiction. In an ordinary suit, *in personam*, a judgment may be rendered against a party in default for a debt or demand which he has paid and extinguished before the commencement of the suit, but the judgment will nevertheless be valid and binding upon him, and he is precluded, in a collateral proceeding, from invalidating the judgment by showing that it was given upon a demand which had been paid.

So an attachment may be sued out against a non-resident, upon a claim which has been paid, or never existed, his lands may be attached, and judgment rendered against them, upon public notice, condemning them to sale for the satisfaction of the claim, and the lands may be sold under the judgment; and no well informed lawyer would seriously contend, that, in a collateral proceeding, involving the title obtained by the purchaser under the judgment, it could be shown that the debt had been paid before the attachment was sued out, and that on that account the judgment was null and void.

Instances of hardship may occur under the general application of the rule, that the judgment of a superior court is not to be treated as null and void, when collaterally called in question, the jurisdiction of the subject matter appearing, and this may be one of such instances, but a departure from the rule would be productive of greater mischief. Human wisdom has proven incompetent to establish rules of law that will not operate hardly in some instances, however clearly they may appear to be founded upon principles of natural justice, or sound public policy.

We think it more consistent with well established principles to hold that the appellant should resort to a direct proceeding to vacate the decree, than to decide that it can be treated as a mere nullity in a collateral proceeding like this.

The judgment must be affirmed.