SPRADLING v. GREEN.

5-934                                    290 S. W. 2d 430

Opinion delivered May 21, 1956.

*Gus Causbie* and *S. M. Bone,* for appellant.

*George W. Booth,* for appellee.

J. SEABORN HOLT, Associate Justice. This litigation involves title to a 5 acre tract of land described as: "A part of the SE 1/4 of the NE 1/4, Section 13, Township 19 North, Range 4 West, lying west of Booth's Creek containing 5 acres more or less and described by metes and bounds as follows: Beginning at the southwest corner of the SE 1/4 NE 1/4, Section 13, thence north on the half mile line to the point of intersection of Booth's Creek; thence along the present bed of said creek to the point of intersection with the south line of the SE 1/4 NE 1/4 of Section 13; thence west to the point of beginning." The facts appear not to be in dispute. As early as 1902 C. D. Foster conveyed this 5 acre tract to M. F. Booth and by mesne conveyances the land was conveyed to appellant, Otis Spradling in 1952. Appellants and their predecessors in title have been in actual possession and control of the said tract of land since 1902. This tract was never segregated and assessed separate from the 40 acre tract, but was included therein. Appellants and their predecessors paid the taxes on this 5 acre tract under an erroneous description as being in the NE 1/4 of the NE 1/4, Section 13, Township 19 North, Range 4 West, until 1945, when a correct description was made of this 5 acre tract on the tax books and, thereafter to the present, appellants have

paid taxes due on this 5 acre tract under the correct description of SE 1/4 of NE 1/4 Section 13, Township 19 North, Range 4 West. The alleged owners of the SE 1/4 of NE 1/4 above, continued to pay the taxes on the entire 40 acre tract, which included the 5 acre tract, until 1935 when it forfeited to the State for the year 1935, was sold and title confirmed in the State on March 4, 1941. Thereafter, on October 26, 1954, the State Land Commissioner executed a deed to the SE 1/4 of the NE 1/4 Section 13, Township 19 North, Range 4 West (40 acres) to appellee, I. N. Green. The record reflects that appellee concedes the following: ''Mr. Causbie: 'We desire to introduce the tax receipts from the year 1935 to the year 1954, inclusive, which show that the land was paid on as the Southwest Part of the Northeast of the Northeast until 1945, and from that time on was paid on as the Southwest Part of the Southeast of the Northeast.' Mr. Booth: 'That is correct' . . . 'I agree that in 1902 C. D. Foster deeded this fractional five acres to M. F. Booth and that there were about six transfers of the same land to other parties until Harvey Spradling acquired the land on August 10, 1949, and that on August 2, 1952, Harvey Spradling conveyed the land to Otis Spradling, and that this is the same land in controversy here.' ''

From a decree declaring that appellee was the owner in fee simple of the SE 1/4 of NE 1/4 Section 13, Township 19 North, Range 4 West, containing 40 acres more or less, is this appeal. Appellee says: ''The only question before this court is: 'did the State have power to sell in 1935, land that had not been separated from the forty acre tract?' This five acre tract that was purchased in 1902. The owner of the forty acre tract, as far as the records show, continued to pay the taxes on the whole forty until 1935 when it went delinquent. Then the whole forty was sold for taxes and confirmation was had in 1941.''

Our rule is well settled that a tax sale is void when it appears that the taxes had been paid on the land at the time of the foreclosure tax sale. The power to sell requires that there must be a lawful tax due, and ''the

owner fairly in default,'' (*Lumsden* v. *Erstine,* 205 Ark. 1004, 172 S. W. 2d 409, 147 A. L. R. 1132). Obviously, it appears to us here that the State was accepting and collecting taxes twice on this same 5 acre tract, in other words, taxes that had been paid in 1935, and it does not appear that this tract had ever forfeited for taxes. Act 423 of 1941 [now § 84-1325 Ark. Stats. 1947] relating to the force and effect of a confirmation decree of the sale by the State of tax forfeited lands provides: ''Nothing in this Act shall prevent any person attacking such decree at any time on the grounds that taxes have actually been paid.'' Since appellee acquired this property on October 26, 1954, some 13 years after the effective date of Act 423 of 1941, it applies here, and as indicated, if the taxes had already been paid on this 5 acre tract for the year 1935, (and not only for that year but from 1902 to the date of the present trial) and we hold that they were, then the State lacked the power to sell and the sale was void. In *Wallace* v. *Brown,* 22 Ark. 118, 76 Am. Dec. 421, this court said: ''It has been well said, that the delinquency of the owner to pay the taxes, is the essential fact upon which the power of sale rests. The right to sell is founded on the non-payment of the tax. If the tax be paid before the sale, the lien of the State is discharged, and the right to sell no longer exists. Where the owner has performed all of his duties to the government, no court will sanction, under any circumstances, the forfeiture of his rights of property. The law was intended to operate upon the unwilling and negligent citizen alone. The legislative power extends no further. The sale involves an assertion by the officer that the taxes are due and unpaid, and the purchaser relies upon this, or on his own investigations, and his title depends upon its truth . . .''

Accordingly, the decree is reversed and the cause remanded with directions to enter a decree consistent with this opinion.

Justices MILLWEE, GEORGE ROSE SMITH and WARD dissent.

GEORGE ROSE SMITH, J., dissenting. The appellants had the burden of proving that the 1935 tax sale was void

and that the State's deed to the appellee therefore conveyed no title. The meager record in this case contains, in my opinion, no evidence to sustain the appellants' attack upon the appellee's title.

The majority hold that the sale was void for the reason that the taxes had actually been paid. The facts are that the appellants and their predecessors in title had, for many years prior to 1935, paid the taxes on a five-acre tract in the northeast quarter of the northeast quarter, perhaps in the belief that they were paying on five acres in the southeast quarter of the northeast quarter. As far as the record shows the five acres now in dispute had never been separated on the tax books from the rest of the forty-acre tract. Apparently someone else paid the taxes on the entire forty acres until it forfeited for nonpayment of the 1935 taxes. It is quite plain that if there was in fact any double taxation it was with respect to the other five-acre tract, on which the appellants and their predecessors were paying by mistake, and of course that fact would not ordinarily affect the validity of the tax sale involving the forty acres now owned by the appellee.

The most that can be said from the record is that the owners paid taxes on the wrong five acres, by mistake. The sole question then becomes: by whose mistake? If the error was made by the taxing officials the sale would be void. *Schuman* v. *Person*, 216 Ark. 732, 227 S. W. 2d 160, 21 A. L. R. 2d 1269. But if the mistake was that of the taxpayer it would not affect the validity of the sale. As we said in *Schmeltzer* v. *Scheid*, 203 Ark. 274, 157 S. W. 2d 193: "Appellants allege, and the allegation is not disputed, that they thought they had paid the taxes every year on the two blocks in question, but it will require no argument to show that one may not discharge his obligation to pay his taxes by showing that he thought he had paid them when his misapprehension was not induced by some officer charged with the duty of collecting the taxes, and no such contention is made here."

424

Even a mistake by the taxing official does not invalidate the sale if the landowner is equally at fault. In *Redfern* v. *Dalton*, 201 Ark. 359, 144 S. W. 2d 713, the landowner paid his money to the county clerk and directed that officer to redeem the land from a 1933 forfeiture and also to satisfy the currently due taxes for 1934. The clerk effected the redemption but failed to pay the current taxes. In holding that the clerk's error did not invalidate the sale we said: "If it be said that the clerk should have included the 1934 taxes in the 1933 redemption certificate, it may be answered that he did not do so, and any inspection of the certificate would have disclosed the fact that it did not purport to cover the 1934 taxes . . . Taxes cannot be discharged in this manner, and the court below properly held that they had not been paid."

It is unnecessary to cite other decisions to the same effect. It is settled by many prior cases that a landowner cannot plead his own mistake as a basis for setting aside a tax sale unless that mistake was induced by the taxing officials. There is a presumption that those officers perform their duty. Since the burden of proof was on the appellants and they failed to offer any evidence whatever to show that they were misled by the public officers, the chancellor had no choice except to follow the decisions of this court and uphold the appellee's title. His decree should be affirmed.

MILLWEE and WARD, JJ., join in this dissent.