DIERKS FOREST, INC. *v.* ELWOOD GARRETT ET UX

5-4172                                            412 S. W. 2d 849

Opinion delivered March 27, 1967

*Wood, Chesnutt & Smith,* for appellant.

*Fred E. Briner,* for appellee.

LYLE BROWN, Justice. This suit was brought by Elwood Garrett and Myrtle Garrett, husband and wife, against Dierks Forest, Inc. The trial court quieted title in the Garretts on their claim of adverse possession and awarded judgment for a small amount of timber cut and removed by Dierks.

Without stating the basis of their title, the Garretts simply alleged ownership in them, asserted that Dierks was trespassing, and asked that Dierks be enjoined.

Dierks filed a denial and a counterclaim, alleging entry under color of title and payment of taxes continuously for 22 years. Although the complaint merely stated an action for trespass, the litigation was treated by all participants as an action to quiet title. Thus Garretts and Dierks introduced their purported records of title and their tax payments, and the Garretts introduced evidence on the contention of adverse possession.

We reach the conclusion that neither party established good record title; that Dierks established entry, in 1941, into unimproved and unenclosed lands under color of title; and that plaintiffs, the Garretts, did not meet the burden of proof with respect to adverse possession.

*Record Title.* Dierks obtained a deed in 1941 from the heirs of Mrs. Dyer, and the deed contained a definite description. However, when Mrs. Dyer obtained her deed in 1896, the land was described as "Part N½ SW¼, Sec. 2, Twp. 1 S., R. 17 W., 73 acres." Dierks contends the seven acres excepted from Mrs. Dyer's deed is identified by a deed conveying the excepted acreage by metes and bounds. In other words, Dierks asks us to hold that since the location of the excepted acreage is readily apparent, we should hold that the deed to Mrs. Dyer conveyed the rest of the eighty acres. If this were a suit between the Dyer heirs and Dierks, we might so hold, but otherwise not. Jones, *The Arkansas Law of Title to Real Property* § 309 (1935). "Part" or "Pt." generally invalidates a description for indefiniteness.

Appellees, the Garretts, find themselves in a wilderness of errors as concerns their record title. It would serve no useful purpose to recite them. The Garretts obtained their deed from W. R. Dunn in 1942, one year after Dierks obtained its deed. There was no record of any grant ever having been made to Dunn. In fact, if Dunn intended to convey the acreage in dispute to the Garretts, he failed to do so, because the description in

the deed called for fifteen acres in an adjoining quarter section.

*Tax History.* Dierks paid taxes on the N½ SW¼, 73 acres (including the land claimed by the Garretts), under proper description and continuously from the date of its deed to the present. Taxes on an indefinitely described fifteen acres were paid by Mr. Dunn from 1940 through 1943, and by Elwood Garrett from 1944 through 1958. The Dunn and Garrett payments were made under a "Pt." description. Garrett failed to pay taxes in 1959, 1960, and 1961, but he redeemed. Under his tax receipt description, the fifteen acres could have been anywhere in the E½ of the SW¼.

From the record title and tax history we find that Dierks began paying taxes on the land in litigation for the year 1942, under color of title, and has timely paid taxes continuously since 1943. Garrett has paid taxes on fifteen acres—somewhere in the E½ of the SW½—but his deed called for acreage in another quarter section. Thus he was paying taxes without color of title, and upon lands which were not susceptible of physical location by examination of the record. In 1963 and 1964, the Garretts obtained a correction deed and two quit-claim deeds. Even if these were valid deeds, they could not serve to disrupt a title already vested. Two of the deeds were in fact obtained after the filing of this suit.

Dierks placed its deed of record on November 18, 1941. At that time the lands were unimproved and unenclosed, except for some evidence of old fencing. No other person was in actual possession at the time, nor had the lands been occupied since 1929. The lands were placed on the tax records in Dierks' name, under a valid description, for the year 1942. Dierks paid, and continued to pay, the taxes, for more than seven consecutive years. Dierks' claim ripened into good title, and that title was held at the time this suit was filed. See Ark. Stat. Ann. § 37-102 (Repl. 1962).

Under the circumstances of Garrett's entry upon the land in 1942—that is, without color of title, and with an obscure record of tax payments by his grantor, Dunn—Garrett could defeat Dierks' claim only by adverse possession. The Garretts' evidence in this respect is wholly insufficient, especially in view of their having the burden of proof. *Clem* v. *Mo. Pac. Rd. Co.,* 223 Ark. 887, 269 S. W. 2d 306 (1954).

Some of Elwood Garrett's relatives had lived on the property many years ago, but the time and dates are not established. The last known occupant, prior to Garrett, appeared to be Bill Dunn, who left the land in 1928 or 1929. After that time the property was not occupied or cultivated, and it grew up in timber. Then in 1942, or shortly thereafter, Garrett purported to take charge. There were remnants of a fence, partially on the front and on one side of the property. This fencing was broken down but Garrett said he "could see where the fence was, had been." Using "hog wire," he proceeded to fence fifteen acres, except the part in the creek and "down the straight part of the road, not down where it turns." He tried to dig a water well but was unsuccessful. He lived in a two-room house which he placed on the property and after a few months moved back to Arizona, where he had employment. Thereafter, a relative lived in the house for about one year. Garrett would return to Arkansas intermittently and would pay taxes, either personally or through a relative. The little house eventually collapsed.

What we have said is a fair summary of the extent of Garrett's dominion over the property. It falls far short of being possession that is actual, open, notorious, peaceable, continuous, hostile, and exclusive for a period of seven years. See, *Supplement to Jones' Arkansas Titles,* § 1498 (1959).

Reversed and remanded with directions that title be quieted to the lands in controversy in appellant,

Dierks, and that the complaint in damages for trespass be dismissed.

Jones and Byrd, JJ., dissent.

Conley Byrd, Justice, dissenting. I dissent from that part of the majority opinion which directs that title to the lands in controversy be quieted in appellant, Dierks Forests, Inc., by virtue of seven years' payment of taxes under color of title, as provided in Ark. Stat. Ann. § 37-102 (Repl. 1962).

The facts show that when Dierks obtained its color of title in 1941, the premises in controversy were fenced with hog wire. When the Garretts obtained their deed and went into possession in 1942, they repaired the fences with barbed wire and built a house on the property. Obviously, Dierks could not acquire title under § 37-102 as long as the premises were enclosed. *Schmeltzer v. Scheid,* 203 Ark. 274, 157 S. W. 2d 193 (1941). Therefore, Dierks could not have obtained any title under § 37-102 until seven years after the premises returned to a state of being wild and unenclosed.

In *Schmeltzer* v. *Schied, supra,* in considering Ark. Stat. Ann. § 37-102, *supra,* we held that the obvious and declared purpose of § 37-102 was to encourage the payment of taxes and to protect persons who pay them.

In *Spradling* v. *Green,* 226 Ark. 420, 290 S. W. 2d 430 (1956), we had before us Mr. Spradling, the owner of a five-acre tract in the SE¼ of the NE¼, who had been erroneously paying taxes under a description in "the SW-pt. of the NE of the NE," from 1902 until 1945, when the description was corrected to read "the SW-pt. of the SE of the NE." The taxes on the 40 acres described as the SE of the NE forfeited to the state for the tax year 1935, and the state's title thereto was confirmed in 1941. Thereafter Mr. Green purchased the SE of the NE from the State Land Commissioner. In holding Mr.

Green's state land deed ineffective as against Spradling's payment of taxes under the erroneous description, which amounted to a double taxation, we there said:

> " '...The right to sell is founded on the nonpayment of the tax. If the tax be paid before the sale, the lien of the State is discharged, and the right to sell no longer exists. Where the owner has performed all of his duties to the government, no court will sanction, under any circumstances, the forfeiture of his rights of property. The law was intended to operate upon the unwilling and negligent citizen alone. The legislative power extends no further. The sale involves an assertion by the officer that the taxes are due and unpaid, and the purchaser relies upon this, or on his own investigations, and his title depends upon its truth . . .' "

Here it is admitted that appellees and their predecessors have been paying taxes upon the disputed tract under a part description from 1901 to date. Since under our adjudicated cases a tax forfeiture upon the description used by Dierks would not defeat appellees' title because of the double tax payments, I cannot interpret § 37-102 as creating a greater forfeiture against a property owner.

For these reasons I would affirm the action of the trial court in quieting title in appellees, since their predecessors in title had apparently acquired the lands either by purchase or adversely from Dierks' predecessors in title.

JONES, J., joins in this dissent.