# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF MINNESOTA.

CHARLES CHAUNCEY *vs.* CORDELIA WASS.

November 14, 1885.

On Reargument, December 24, 1886.

**Taxes—Jurisdiction—Judgment against Land for Taxes never Delinquent.**—In proceedings to enforce payment of taxes against real estate, the jurisdiction of the court as to a particular tract is not affected by the fact that the taxes upon such tract have been previously paid; following *County of Chisago* v. *St. Paul & Duluth R. Co.*, 27 Minn. 109, (6 N. W. Rep. 454.) The rule is not changed by Laws 1881, *c.* 10, § 19.

Appeal by plaintiff from an order of the district court for St. Louis county, *Stearns*, J., presiding, overruling a demurrer to the complaint, the allegations of which are in substance as follows:

Prior to July 19, 1883, plaintiff was and still is the owner in fee of lot 49 on St. Louis avenue in Upper Duluth, which lot is and always has been vacant and unoccupied.

On July 19, 1883, the auditor of St. Louis county, under his hand and official seal, made and delivered to one Wm. W. Billson a certificate of assignment from the state of its title and interest in the lot acquired at the tax sale pursuant to the real estate tax judgment entered August 13, 1881, in proceedings to enforce payment of taxes

v.35m—1

delinquent upon real estate for 1880 for St. Louis county, which certificate was duly recorded September 28, 1883.

(The certificate is set out in full in the complaint. It is regular on its face, containing the proper recitals, among others that the land was bid in for the state for 36 cents, and the amount paid by the assignee to obtain the assignment was 48 cents.)

The complaint then alleges that the certificate is, upon its face, regular and valid, and *prima facie* evidence of title to the lot in the assignee, and is a cloud on plaintiff's title; but that the certificate, and the judgment and sale and all the other proceedings recited in it, are unlawful and void for the reason that long before the rendition of the tax judgment, and long before June 1, 1881, (when unpaid taxes of 1880 became delinquent,) the taxes on the lot for 1880 and all prior years had been paid by plaintiff, and no taxes whatever were then due on the property.

The complaint further alleges that after September 26, 1883, and before the bringing of the action, Billson conveyed the lot by quit-claim deed to the defendant, and prays that the certificate as well as the bidding-in of the lot for the state be adjudged void, and for general relief.

The appeal was argued at the October term, 1885, of this court, and on November 14, 1885, the first of the following opinions was filed. A motion for reargument was granted, and the cause reargued at the April term, 1886. At the hearing on the motion, as well as at the subsequent reargument, counsel for others whose property had been sold under judgments for taxes which had been paid or from which the property was exempt, were permitted to take part. The arguments of counsel and the authorities cited, as well as the statutory provisions involved in the case, fully appear in the prevailing and dissenting opinions.

On the original argument, the counsel were

*P. Ayer*, for appellant.

*Wm. W. Billson*, for respondent.

On the rehearing, the cause was argued by *P. Ayer, John D. Howe, Clark, Eller & How*, and *Gordon E. Cole*, for appellant and others similarly situated.

*Wm. W. Billson* and *C. A. Congdon,* for respondent.

The following are the opinions filed November 14, 1885, after the first argument:

GILFILLAN, C. J. Defendant claims title to the land in controversy through a sale on September 19, 1881, under the tax judgment in proceedings that year to enforce the tax of 1880. The plaintiff claims that the judgment was void because the tax for 1880 was paid before its rendition. Does the fact that a tax upon real estate has been paid render a subsequent judgment and sale for the tax void? is the only question in the case.

The filing of the delinquent list with the clerk of the court has "the force and effect of filing a complaint in an action by the county against each piece or parcel of land therein described, to enforce payment of the taxes and penalties therein appearing against it, and shall be deemed the institution of such action." Gen. St. 1878, c. 11, § 70. When the notice required by section 71 has been published in the manner required by section 72, "the notice shall be deemed to have been served, and the court to have acquired full and complete jurisdiction to enforce against each piece or parcel of land in said published list described, the taxes, accrued penalties and costs upon it then delinquent; * * * and such jurisdiction shall not be affected by any error in making the list filed with the clerk," etc. Section 73. The provisions of these sections being complied with, the court has jurisdiction to try and determine the claim, presented by the filing of the list, that the taxes appearing upon it are due from the respective pieces of land against which they appear upon it. By filing the list the county asserts that the taxes are due, and presents the matter for the court to try and determine, and the jurisdiction of the court to try and determine it cannot depend in any degree upon the rightfulness of the claim presented for its adjudication.

That the land is exempt or that the tax has been paid is a defence which must be "made to appear by answer and proofs." Section 79. This was decided in *County of Chisago* v. *St. Paul & Duluth R. Co.,* 27 Minn. 109, (6 N. W. Rep. 454,) a case not distinguishable from this, so far as this point is concerned. The judgment is conclusive of the right to enforce the tax, unless the statute provides some mode

of avoiding that effect.   Section 85 specifies the only grounds upon which the sale may be set aside or held invalid.   That the land was exempt from taxation, or that the tax was paid before judgment, is not among them.   A remedy to the owner in such case is afforded by section 80, which declares that the judgment shall be final, except on review by the supreme court; but authorizes the court, before the period of redemption expires, to open or vacate the judgment and permit the party to defend, to the same extent as before judgment, on the ground that the tax has been paid or that the property is not subject to taxation.   Certainly down to 1881 there was no provision of statute under which a sale pursuant to the judgment could be attacked on either of these grounds.

But it is claimed that Laws 1881, c. 10, § 19, amending Gen. St. 1878, c. 11, § 97, has the effect to abrogate the rule as it existed to that time.   Section 97 did not assume to declare the force and effect of the judgment, nor the causes for which the sale might be held invalid, but only to provide for refundment to the purchaser or assignee from the state of the amounts paid by him on the sale or assignment, and for subsequent taxes, penalties, and costs.   As the section originally stood, refundment could be made only where there was a judgment declaring the sale void.   The material amendment is in the proviso added by Laws 1881, c. 10, § 19.   This provides for refundment, (without a judgment declaring the sale void,) upon certain proofs presented to the county auditor that the land is exempt from taxation, or that the taxes had been paid prior to the sale, and authorizes the auditor, "if such lands were bid in by the state," to "cancel such sale and satisfy the tax judgment."   It is suggested, as an argument, that the legislature could have had no reason for providing this summary mode of surrender by the state or a cash purchaser of the right apparently passed by the sale, and refundment to the cash purchaser, but its understanding that nothing passed by the sale, i. e., that it was void.

It would be very unsafe to imply an intent to repeal or abrogate an established rule, from a doubtful conjecture as to the reason which may have influenced the legislature to pass an act.   It is not clear for what reason the legislature passed the proviso.   It may have been

to enable parties to avoid the uncertainty that must rest on the right of the purchaser so long as the power to vacate the judgment and permit a defence as provided in section 80 exists, or to restore the *status quo* in a cheaper and more summary method than is provided in that section. It is useless, in determining this question, to conjecture what may have been the reason; for the words to express the intention to establish a rule that tax judgments shall be void because the lands are exempt, or the taxes have been previously paid, are so obvious that the avoidance of them shows the absence of such intention. In Laws 1881, *c.* 135, which applied only to enforcement of taxes delinquent in 1879 and previous years, and some of the provisions in which were much more rigorous and harsh than the provisions with respect to the same matters in Gen. St. 1878, *c.* 11, the legislature did intend that the sale should be void in case of exemption or payment of the tax before judgment, and could not have supposed that it would be void without an explicit declaration to that effect. And so, in section 7, it is expressly declared that proof at any time of either of those facts shall avoid the sale. Without that declaration, the judgment and sale under that act would have been of the same force and effect as judgment and sale under the general statute. We would not be justified in implying, from the language of the amendment to section 97, an intent to change the previously existing rule as to the conclusiveness of the judgment.

Order affirmed.

BERRY, J., (*dissenting.*) In my opinion, under a fair construction of the tax law, (Gen. St. 1878, *c.* 11,) and especially of section 73, we are not required to hold that the district court is invested with jurisdiction to enforce a tax which, having been paid, is *not delinquent,* even if it be competent (which I doubt) for the legislature to confer, or the court to exercise, any such jurisdiction, (especially upon mere constructive notice.) I think the gross injustice which will certainly result ought to make this court slow to sustain any such assumed jurisdiction, unless absolutely compelled so to do by the explicit language of the statute. I therefore dissent from the opinion of my brethren in this case, although in so doing I am obliged to re-

cant what I now deem to be the erroneous *dictum* of *County of Chisago* v. *St. Paul & Duluth R. Co.*, cited in the majority opinion.

---

The following are the prevailing and dissenting opinions upon the reargument, and were filed December 24, 1886.

GILFILLAN, C. J.    After the decision in this case, when first submitted, an application was made in the name of the appellant for leave to reargue the questions involved, and, the case having been brought within the rule established by this court for applications of the kind, such leave was granted.    On the reargument the counsel for divers corporations interested in the questions—indeed, all who applied to be heard on the side of appellant—were permitted to take part in the argument.    Consequently the questions were more fully argued than in any other case involving the same questions that has come before the court.    The construction of the statutes contended for by the appellant would radically change the character of the proceedings established by statute for the collection of taxes upon real estate, as heretofore understood by the courts, the legislature, and, we think, the people; and for that reason, as well as because of the great importance of the questions, we deem it proper to enter in this opinion more at large than we do in ordinary cases into a discussion of the various provisions of the statute.    That the courts have always regarded the statute now in force as intending to give to tax sales the sanction of a previous judicial determination of the right to make such sales is apparent from the fact that in many cases the matter of the nature of the proceedings to enforce collection of taxes against real estate has been directly or indirectly before this court, and in no case prior to this one has the court, or any judge of it, intimated any doubt that the judgment directing the land to be sold for the tax mentioned in it is entitled to the same force and effect as judgments in ordinary actions, and that it conclusively determines the right to sell the land as directed by it.

The legislative construction is apparent from the course of legislation.    In section 119 of the original act, (Laws 1874, c. 1,) pay-

ment and exemption were provided for as defences to be made in the proceedings. This provision has remained through all changes in the law. By section 125 it was provided that a sale might be set aside on proof "that the court rendering the judgment pursuant to which the sale was made, had not jurisdiction to render the judgment." This latter provision was struck out in 1875. Laws 1875, *c.* 5, § 30, amending section 125 of the act of 1874. In 1877, (Laws 1877, *c.* 6, § 22,) this section was again amended, not by restoring the provision in the original act, but by inserting a provision that the sale might be set aside "if it shall appear that the taxes for which such sale was made had, prior to such sale, been paid, or that such lands were not subject to taxation." In the revision of 1878, (Laws 1878, *c.* 1; Gen. St. 1878, *c.* 11,) the above-quoted provision from the act of 1874 was restored, (section 85,) the above-quoted provision from the act of 1877 was struck out, and a provision inserted (section 80) giving the court power to open or vacate the judgment at any time before the expiration of the period for redemption, and allow a defence to be interposed on the ground that the tax has been paid, or that the land is not subject to taxation. There was then also inserted in the law, for the first time, by section 76, this clause: "And the same presumption in favor of the regularity and validity of the said judgment shall be deemed to exist as in respect to judgments in civil actions in said court."

We must presume that the legislature meant something by these various alterations; that in striking out the clause quoted from the act of 1874, it intended that the sale should not be avoided on the grounds therein stated,—that is, that the judgment should not be thus collaterally assailed; that in inserting the clause quoted from the act of 1877, it intended that the sale should be avoided for the reasons stated in it, and understood it could not be avoided without that clause; and that in the revision of 1878, by striking out that clause, it intended that those reasons should no longer be ground for avoiding the judgment and sale, except as provided in section 80; and that it understood the judgment to be a judicial determination of whatever is involved in, and is necessary to justify, what it directs, to wit, a sale of the land.

The decision in *County of Chisago* v. *St. Paul & Duluth R. Co.*, 27 Minn. 109, (6 N. W. Rep. 454,) in which it was directly decided that the proceeding is one to try and determine the validity of the tax appearing on the list filed, and that the question does not go to the jurisdiction of the court, was filed in August, 1880. The legislature (it has not been slow to make what it deemed proper changes in the tax law) has made no move to change the general law in that particular. It must be presumed that its acquiescence in the construction of the law by that decision was because it considered it to be in accordance with the legislative intention,—with its own construction of the law.

In 1881 it passed an act (Laws 1881, c. 135) to enforce the payment of taxes which became delinquent in and prior to the year 1879. It provided that the same proceedings for judgment and sale should be had as in the general tax law; but it reserved no right of redemption after sale, no right to apply for a vacation of the judgment after its rendition, on the ground of exemption or payment, as in section 80 of the general law, and it had other features harsher than are in the general law. The list was to be a sort of omnibus list. It might have on it the taxes for many years. It was therefore more liable than the list under the general law to have on it land for years when it was exempt, and taxes that had been paid. Obviously, for these reasons, there was inserted a provision that the judgment and sale should be void on proof at any time that the land was exempt or the taxes paid. This provision was entirely superfluous, except on the theory that without it the judgment would be conclusive upon those facts, and the insertion of it shows the legislature understood such would otherwise be the effect of the judgment.

Notwithstanding the clause quoted from section 76, enacted after the case of *Eastman* v. *Linn*, 26 Minn. 215, (2 N. W. Rep. 693,) arose, we think the tax judgment may, in a collateral action, be assailed for want of jurisdiction. The provision was enacted by the act which re-enacted the clause quoted from section 125 of the act of 1874. The two provisions must stand and be construed together, if possible, and be held to modify each other, if necessary, in order to avoid rejecting either. So construing them, section 76 attaches

to the judgment the same presumption of regularity and validity as in respect to judgments in civil actions in the district court, to wit, a conclusive presumption, except that, as provided in section 85, want of jurisdiction may be proved.

No one could deny that the legislature has power to provide a judicial proceeding or action in which shall be conclusively determined, before any sale, that the land is or is not legally chargeable with any taxes appearing against it in the books of the proper officers, and to provide on what the jurisdiction of the court shall depend, and how it shall attach, and in what manner the court shall proceed, if the whole proceeding provided for come within the meaning of the term, "due process of law," as used in the constitution. The legislature has apparently attempted to do this. At least, it has provided, commencing with section 70 of the tax law, (Gen. St. 1878, *c.* 11,) for a proceeding to be commenced in the district court, to be upon a prescribed notice, to be conducted on pleadings and proofs, and which may be taken to the supreme court for review, and which is to result in what is called a "judgment;" a sale to be had only if the so-called "judgment" so direct, and the land to be discharged of the claim for the tax if the so-called "judgment" so determine.

The character of this proceeding, its nature, scope, purpose, and effect, what the court is to try and determine, and how it shall get jurisdiction so to try and determine, depend on the intention of the legislature, as expressed in the statute. The intention is to be got at by considering the sections of the statute which provide for and regulate the proceeding. There are a great many sections which have no reference to the proceeding in court, but merely prescribe duties of ministerial or administrative officers,—such as assessors, auditors, treasurers, and boards of equalization. The counsel on the side of appellant argue that section 69 is controlling as to the jurisdiction of the court, and as to what is before it for decision. "That," says one of the briefs, "is the dominant section." But that section makes no reference whatever to the proceeding in court, its purpose, scope, or character. It assumes only to prescribe certain duties to the county auditor and treasurer. It does not even assume to define a "delinquent tax." It makes no mention of two essential elements of de-

linquency. When we are inquiring as to the character of a proceeding in court, provided for by other sections, to go to such a section as 69, and especially to let it control the evident import of such other sections, would violate the most obvious rules of interpretation.

Down to and including section 69 there is nothing from which it might be conjectured that there is to be any action of a court. For aught that thus far appears, the sale is to be made in the same manner as before the act of 1874. Section 70 provides that the auditor shall file, on or before the 15th day of June, a list of the delinquent taxes, verified by him, in the office of the clerk of the court; and continues: "The filing of such list shall have the force and effect of filing a complaint in an action by the county against each piece or parcel of land *therein described,* to enforce payment of the *taxes and penalties therein appearing against* it, and shall be deemed the institution of such action." This is the only section which assumes to state expressly the purpose, scope, and character of the proceeding. It is to this section, and those which illustrate its meaning by regulating the proceeding provided by it, and not to those devoted exclusively to other purposes, that we are to look in order to determine what the proceeding is. The language of the section is unambiguous. Its force and meaning cannot be avoided, except by ignoring the section altogether. The filing of the list is the institution of an action against each piece or parcel of land described in it, and the list is a complaint against each piece or parcel, for the taxes and penalties appearing in the list against such piece or parcel. It tenders an issue as to the validity of the taxes appearing on it as effectually as though it contained formal allegations of every fact necessary to make such taxes valid. The action is one *in rem,* against the land, and not against any person. Only a judgment in favor of or against the land—none for or against any person—can be rendered. It is an untenable proposition that the action may, by appearance and answer, become one *in personam;* for the same judgment—for or against the land—is to be rendered whether upon default, or after answer and trial.

Section 71 provides for notice "to all persons, companies, or corporations who have or claim any estate, right, title, or interest in, claim

to, or lien upon, any of the several pieces or parcels of land *in the list hereto attached described,*" (such list being a copy of the filed list.) It requires them to file an answer, setting forth any objection or defence they may have "*to the taxes and penalties, or any part thereof, upon any piece or parcel of land described in said list,*" in which they may have or claim any estate or interest, etc.; and it gives them notice that, in default of so answering, "judgment will be entered against such piece or parcel of land *for the taxes on said list appearing against it,*" etc.

Section 72 provides for publication of the notice, and section 73 that, "when the last publication shall have been made, the notice shall be deemed to have been served, and the court to have acquired full and complete jurisdiction to enforce against each piece or parcel of land, in said published list described, the taxes, accrued penalties, and costs upon it, *then delinquent,* so as to bind every estate, right, title, interest, claim, or lien, in law or equity, in, to, or on such piece or parcel of land, of every person, company, or corporation." And then, as if to guard against any failure of jurisdiction in respect to any piece of land or tax within the complaint (the list filed) and the notice, (the list published,) the section continues: "And such jurisdiction shall not be in any way affected by any error in making the list filed with the clerk, nor by any error, irregularity, or omission in the assessment or levy of the taxes, or in any other proceedings prior to filing said list, nor by any mistake in copying the list for publication, nor by any mistake in publishing such list, nor by any mistake in the amount of tax in such published list appearing against any piece or parcel of land therein described."

Section 75 provides how an answer shall be made, which "need not be in any particular form, but shall clearly refer to the piece or parcel of land intended, and set forth, in ordinary and concise language, the facts constituting the defence or objection to such tax or penalty," of course referring to the tax or penalty appearing on the list.

Section 79 provides that no omission prior to filing of the list shall be a defence, unless it shall have resulted to the prejudice of the party answering, in which case the court may reduce the amount of

taxes on the piece or parcel of land, and give judgment accordingly; and that "it shall always be a defence in such proceedings, *when made to appear by answer and proofs, that the taxes have been paid, or that the property is not subject to taxation.*"

Section 77 provides for a trial, when answers are filed: "The court shall proceed without delay, and summarily hear and determine the objections or defences made by the several answers, and shall dispose of all such answers, and direct judgment accordingly, at the same term; and in the trial thereof shall disregard all technicalities and matters of form, not affecting the substantial merits." Section 78 provides that if the taxes and penalties—those on the list—be sustained, in whole or in part, against any piece or parcel of land, judgment shall be rendered against it for the amount as to which the taxes and penalties shall be sustained, and direct the piece or parcel to be sold, unless the amount is paid; and that, if the court shall sustain the defences or objections as to any pieces or parcels, the judgment shall be that they "are discharged from the taxes *in said list* set down against such pieces or parcels, and from all penalties."

Great stress is laid in one of the briefs on the words "*then delinquent,*" in section 73, and it is argued from them that delinquency *in fact*, aside from whatever the court may determine in the proceeding, is a prerequisite to the power or jurisdiction to try or determine anything,—to entertain the proceeding at all. Of course, the legislature did not contemplate that any but taxes legally chargeable against the land should be enforced. But how is that to be ascertained and determined? In the action provided for enforcing the taxes, or in some other independent action or proceeding? That action is declared to be one to enforce the taxes and penalties appearing on the list filed. Parties interested are cited to answer, setting forth any objection or defence to the taxes and penalties appearing on that list. Provision is made as to how such objections or defences shall be presented; the effect that certain objections or defences, among them exemption and payment, shall have; for a trial of "the objections or defences made by the several answers," and how it shall be conducted; for judgment on the merits, according to the facts as found on such trial,—giving its form in case the tax be sustained, and its form in

case the objection or defence be sustained, the judgment in the latter case discharging the land from the taxes *"in said list set down"* against it.

It is difficult to see how any one can, after reading the sections we have referred to, make any question that the action is one to try and determine whether the several tracts described in the list filed are legally chargeable with the taxes and penalties therein set down against them, to enforce such taxes and penalties if determined to be legally chargeable, and discharge the land from them if the contrary be determined, and the judgment either way is declared to be final, except that it may be reviewed by the supreme court. Section 80. If the legislature had intended that the court can have no jurisdiction unless the tax is delinquent, then we would naturally expect a provision for a dismissal of the proceeding in case the court find it not delinquent, instead of for judgment on the merits, according to the finding. There is no case to be found, there never was a case under any system of jurisprudence, in which a court was required or permitted to decide the merits upon a finding against the facts essential to its jurisdiction. Power to try and render judgment on the merits is jurisdiction. Whenever that power is given, jurisdiction is conferred, no matter what terms the statute employs. When the statute gives the court authority, upon the filing of the list and publication of the notice, to receive answers setting forth *"any objection or defence,"*— among such objections or defences exemption or payment of the taxes or penalties in the list filed; to hear and determine such objections and defences, and direct judgment accordingly, directing the land to be sold to satisfy the amount found due, if the tax be sustained, and discharging the land from the tax and all penalties, if the objection or defence be sustained, it gives the court jurisdiction over the matter of the taxes set down in the list for the purpose of rendering judgment upon them for or against the land. The action is by the state, in the name of the county, against each tract of land described in the list; in which action the state presents, as its claim or cause of action against each tract, the tax and penalty in the list set down against it. That is the matter presented for the court to pass on, and which, if the statute means anything, the judgment does pass

on. If we make delinquency in fact a prerequisite to the power of the court to act at all, without which it cannot pass on anything, and if it cannot determine the matter of delinquency, what can there be for it to try? Why provide for answers, objections, and defences, for a trial and judgment? To constitute a legally delinquent tax on land three things are necessary: *First,* that the land is subject to taxation; *second,* that a tax authorized by law has been levied on it in the manner provided by law; *third,* that the tax remains unpaid after the time appointed by law for its payment. To make out a tax delinquent, each of these things must be shown,—each is as essential as either of the others. If the jurisdiction of the court depends on delinquency, the absence of either of these elements will defeat it.

It is argued that, the land being subject to taxation, and the tax being unpaid, the court may try the second of these requirements. There is no warrant in the statute for any such distinction. The same section (79) which provides for a defence on the ground that the officers levying the tax have not proceeded according to law, and in what case and to what extent it shall be a defence, provides also for the defence of exemption or payment. The section (77) which provides a trial for one defence also provides a trial for the others, and provides (as to all alike) for "judgment accordingly." Whatever the defence may be, judgment on the merits must be rendered. To make any distinction in the various objections to the tax, as affecting the jurisdiction or power of the court to determine them, requires a remodelling of the statute, which the legislature only can attempt.

The statute most pointedly provides for a trial and judgment on a tax which cannot be called legally delinquent at the time the action is commenced. Delinquency necessarily includes present obligation to pay. It is the neglect of that obligation. A tax on the list may be made up in part of items of tax which there is no authority to levy, or the tax may be too much, by reason of the officer's proceeding irregularly. In either of these cases there can be no obligation to pay —no actual delinquency in the tax on the list—until the true amount is determined. The amount may be determined in this statutory proceeding. *County of St. Louis* v. *Nettleton,* 22. Minn. 356.

If the jurisdiction of the court depends on a previously existing de-

linquent tax, if all its proceedings may be overturned by subsequent proof that there was no such delinquent tax, then, as it seems to us, the legislature has with great care and elaborateness provided for an action in which nothing can be tried, to result in a judgment by which nothing will be decided. It is said that it was intended that the judgment should be *prima facie* valid. But if the legislature desired only something which should be *prima facie* evidence of the right to sell the land, why did it not merely retain the simpler provision in the law prior to the act of 1874, by which the deed executed by the auditor was *prima facie* evidence of a good title in the grantee? Gen. St. 1866, *c.* 11, § 140. If the court has authority to try and determine the questions of exemption and payment, then those matters are within its jurisdiction, however it may determine them. If, on the other hand, its jurisdiction depends on the facts that the land is liable to taxation, and the tax is unpaid, and if its decision of those jurisdictional facts is not binding, then, so far as those facts are concerned, its judgments, whether rendered on default or upon answer and trial, amount to nothing. They bind neither the state nor the parties interested in the land. If it is defeated on those grounds it can bring another action. If they are defeated they may disregard the judgment, or the sale pursuant to it. The decisions of the district courts, and of this court, rendered in the action under the statute, by which the *status* as to taxability of millions of acres of lands has been determined, are of no force as judgments. They leave the question of the taxability of those lands still open.

The counsel for one of the parties heard on the side of the appellant concedes this result; but the counsel for another of the parties endeavors to evade it by the proposition that, by appearing and answering, a party gives the court jurisdiction over his interest in the land, so that the judgment will bind him. But while a party may consent to jurisdiction so far as his person is concerned, may waive anything intended for his benefit,—such as notice, or service of process, to bring him into court,—he cannot, by consent or by anything that he does, give jurisdiction over the subject-matter. If cases only of a certain class, to wit, those where the land is subject to taxation and the taxes are unpaid, are committed by the statute to the juris-

diction of the court, no one but the legislature can enlarge the class, or extend the jurisdiction to any other cases.

The main defect in the tax law prior to 1874 was not in the details by which taxes were assessed, but in the mode of enforcing their payment. All the proceedings down to and including the sale and execution of the deed were the acts of merely ministerial officers. There was no way for the state to test its right to sell, nor by the purchaser after the sale, except in an action between him and the former owner, which action the purchaser might not for years be in position to bring. All the risks were cast on the purchasers; and the courts everywhere had adopted and adhered to rules of decision in respect to the acts of ministerial officers, requiring such strict compliance with the terms of the statute as made it practically impossible that any sale should stand. Blackwell, in his work on Tax Titles, (p. 71,) says of such sales: "Out of a thousand cases in court not twenty have been sustained." The supreme court of California in *O'Grady* v. *Barnhisel,* 23 Cal. 287, 292, said: "It had become proverbial that a tax title was no title at all, and a sale for taxes was as near a mockery as any proceeding having the appearance of legal sanction could be." As a consequence, the attempt to enforce payment by sale without judgment became, practically, a mockery. No one would bid. Owners, if so disposed, defied the attempt of the government to collect its revenues. The tax laws had no efficiency, for they had no terror for those disposed to evade payment. The essential difference between the former and the present laws is in the mode of enforcing payment. The change can be explained only by assuming that the legislature intended to substitute for the former mode one by which the sale should be made under the sanction of a judicial decree establishing the right to sell, on which bidders could safely rely. There existed at that time, and still exists, a condition of things which made it peculiarly expedient that the right to tax and to sell should be settled before a sale, and which, it is fair to assume, influenced the legislature in providing for a judgment before sale. There were in the state millions of acres of land temporarily exempt from ordinary taxation. Most of them were lands granted by the state to various railroad corporations, with a provision in the grants

that they should be exempt from such taxation until "sold" or "sold and conveyed" by the corporations. Unfortunately no time was fixed in any of these grants beyond which, if the lands were not sold, the exemption should cease. But it was not supposed to be perpetual. It was expected that more or less of them would every year pass into private hands, and become subject to taxation, like other real estate, and that it would then be the duty of the officers administering the tax laws to levy taxes on them, and to sell them for the taxes, if not paid.

The difficulty in the way of those officers determining when to act, and that any determination by them would necessarily be but a haphazard conjecture, had been illustrated in the case of *First Division, etc., R. Co.* v. *Parcher,* 14 Minn. 224, (297,) decided in 1869, which involved the *status,* as to taxation, of the entire land grant of the company. That case arose upon an action by the railroad company. There was no proceeding prior to the act of 1874 which the state could take to bring to a test the right to tax such lands. As instances of what the legislature might, and undoubtedly did, anticipate as certain to occur, we refer to those cases which have come to this court involving the taxability of great masses of those lands: *State* v. *Winona & St. Peter R. Co.,* 21 Minn. 315, involving the entire land grant of the company, its taxability depending on a constitutional question; *State* v. *Same,* Id. 472, involving about 600,000 acres, the question being whether a certain transaction, which left the legal title in the company, was, in effect, a sale and conveyance, within the meaning of the exemption clause in the grant; *County of Nobles* v. *Sioux City & St. Paul R. Co.,* 26 Minn. 294, (3 N. W. Rep. 701,) involving the lands in the grant from St. James to the Iowa line, a distance of 74 miles; *St. Paul & Sioux City R. Co.* v. *McDonald,* 34 Minn. 182, (25 N. W. Rep. 57,) involving 400,000 acres; *St. Paul & Chicago Ry. Co.* v. *McDonald,* 34 Minn. 195, (25 N. W. Rep. 453,) involving all the lands remaining of the grant for the line from St. Paul to Winona. The absurdity of leaving the matter of taxing and selling such lands to merely ministerial officers appears especially in these last two cases, from the facts that no proceedings were taken for several years, nor until the nature of the transactions claimed by

the state to make the lands taxable, previously known in full only to the parties to them, was in part disclosed upon an investigation by a committee of the legislature, and that, when fully ascertained by a judicial examination, the district court and this court differed widely as to the effect that the transaction might have on the exemptions. The case of *County of Cass* v. *Morrison,* 28 Minn. 257, (9 N. W. Rep. 761,) involved the *status,* as to taxation, of all the lands in this state in the grant by the United States to the Northern Pacific Railroad Company, between two and three million acres, if there were lands sufficient to fill the grant. Another class of lands exempt from ordinary taxation are such as, no matter how acquired, are part of a railroad, and which, though owned by a railroad company, become taxable in the ordinary way whenever they cease to be a part of the railroad. That such instances may be of frequent occurrence, and the difficulty of determining upon them, will appear from the cases of *County of Ramsey* v. *Chicago, Mil. & St. Paul Ry. Co.,* 33 Minn. 537, (24 N. W. Rep. 313,) and *County of Hennepin* v. *St. Paul, M. & M. Ry. Co.,* 33 Minn. 534, (24 N. W. Rep. 196.)

It is impossible to doubt that, in considering the tax laws in 1874, the legislature foresaw that what had happened in the past would happen in the future; that, growing out sometimes of *bona fide* transactions, sometimes of devices resorted to to preserve these exemptions in favor of parties not entitled to them, there would be continually arising controversies between the state and the railroad companies as to the continuance of the exemptions; that to proceed and levy taxes upon the lands, and offer them for sale with no other assurance of the right to tax and sell than the acts and judgment of merely ministerial officers, the bidder for such tract to take his chances in a probably tedious and expensive litigation with one of these great corporations, would be futile; and that in providing for a new and more efficient mode of enforcing payment of taxes, giving to the sale the appearance of judicial sanction, it intended the judgment to have more effect upon the *status* of these lands, as to the right to tax them, than the acts of ministerial officers had under the previous law; that it intended the judgment to determine the lands to be subject to taxation, or not subject to it; to provide—what did not exist before—a

mode by which the state could, not depending on the pleasure of the parties interested, bring the matter of its right to tax and sell the lands to a conclusive determination before selling. There were also other large classes of exempt property as to which it was expedient, as the contentions with respect to their right to exemption that have come before this court will show, that some mode for testing the right to exemption before a sale should be provided. There were public hospitals, academies, universities, seminaries of learning, churches, church property used for religious purposes, houses of worship, institutions of purely public charity, etc.

Several of the states have provided, by statute, proceedings in their character judicial, and resembling more or less that existing here, for the enforcement of taxes. We shall refer to them only so far as there have been decisions of the courts on questions arising in respect to those proceedings similar to the questions presented in this case.

In Tennessee, California, Illinois, and in Pennsylvania in respect to municipal taxes, the proceeding to enforce is an application for judgment by petition, report of the collector, or a list of the taxes filed in the court, and a judgment on such application, after which comes the sale.

In Arkansas the proceedings go on to a sale through the action of merely ministerial officers, but the statute gives the purchaser the right to apply to the court for a decree confirming the sale, upon a notice, published for six weeks, requiring all persons interested to show cause why the sale should not be confirmed. In Iowa, as the statute existed at one time, there was a proceeding similar to that in Arkansas. It is a mistake to consider these actions in Arkansas and Iowa as ordinary suits to quiet title, depending on and controlled by the ordinary equity jurisdiction of the court. The court could not have entertained such an action, proceeding in that manner, but for the statute. Its jurisdiction depended on the statute. The action was statutory,—a proceeding *in rem* against the land. *Wallace* v. *Brown*, 22 Ark. 118, (76 Am. Dec. 421.) The same questions were involved in them as are involved in the application for judgment under our statute, as we construe it, including the validity of the tax,

its non-payment, and the right to sell the land for its payment. The only essential difference between our proceedings and those is that by ours it is an action before sale, and in the name of the county; in those states after sale, and in the name of the purchaser.

In *Wallace* v. *Brown, supra,* where the judgment or decree in question was rendered on default, (there being no actual service of notice,) the court held it could not be assailed by proving that the tax had been previously paid, the court saying: "The existence or validity of the debt or demand upon which the suit is founded, at the time of rendering the judgment or decree, *is not the criterion of jurisdiction.*"

In *Worthen* v. *Ratcliffe,* 42 Ark. 330, 344, the court said: "Every question with respect to the assessment of the land in controversy, or the *non-payment of taxes,* or the regularity of the proceedings of the sheriff and collector, is concluded by that decree, provided the court which rendered it had jurisdiction of the *petition,* and provided the decree was not obtained by a fraudulent misrepresentation or concealment of facts." This was recognized as the rule in respect to such Arkansas decrees, by the supreme court of the United States, in *Parker* v. *Overman,* 18 How. 137, 142, and *Thomas* v. *Lawson,* 21 How. 331, 341.

In *Gaylord* v. *Scarff,* 6 Iowa, 179, 186, the court held to the same effect, saying: "As the non-payment is the essential fact on which the power to sell rests, the decree necessarily includes within it the finding of that fact, and, in the absence of fraud, must be conclusive."

In *Cadmus* v. *Jackson,* 52 Pa. St. 295, 304, there was in question the validity of a sale under a judgment for a municipal tax; the claim being that the tax had been previously paid, and that all judicial process founded on paid taxes is null. The court said: "This answer cannot prevail, because there is the judgment for the taxes in full force, and it cannot be collaterally impeached."

In *Mayo* v. *Foley,* 40 Cal. 281, the question being upon the effect of a tax judgment, the court said: "The legality of the assessment in the first instance, and the fact of the delinquency in its payment, were the very questions made in the suit which resulted in the decree itself,

and it was directly determined and adjudged therein that these taxes were legally levied, and were due and unpaid."

In *State* v. *Sargent,* 12 Mo. App. 228, it was held that the tax judgment (in that instance rendered on constructive notice only) was conclusive.

In *Knoll* v. *Woelken,* 13 Mo. App. 275, of a tax judgment the court said: "That this particular tax was void, and would not authorize the judgment rendered, was matter of defence to be set up in that action, but *did not go to the question of jurisdiction at all.*"

With respect to the proceedings to enforce taxes in Tennessee, the court, in *Thatcher* v. *Powell,* 6 Wheat. 119, 127, said: "This act gives the power only on a report to be made by the sheriff, [the collector of taxes.] This report gives the court jurisdiction, and without it the court is as powerless as if the act had never passed."

In *Spellman* v. *Curtenius,* 12 Ill. 409; *Pickett* v. *Hartsock,* 15 Ill. 279; and *Morrill* v. *Swartz,* 39 Ill. 108, the court held the collector's report of delinquent taxes filed in the court to be the foundation of the proceeding; in the last case saying: "This report is what gives the court its jurisdiction."

The holding that the jurisdiction of the court depends on the filing of the report, and not on the validity of the tax, is further emphasized by the decision in *Gage* v. *Parker,* 103 Ill. 528, 536, holding conclusive a judgment for a local assessment rendered in proceedings similar to those for the collection of the general taxes, the court saying: "If the assessment was illegal, from the fact that it was based upon an insufficient ordinance, it was the duty of the complainant in the bill to appear before the county court when the application was made to confirm the assessment, and there make the objection."

We have made these references to decisions upon the tax laws of other states for the purpose of showing that, though such laws as to the mode of enforcing payment are very similar to ours, in no instance has it been supposed that the jurisdiction of the court depended in any respect on a valid, unpaid tax, but that such jurisdiction has its inception in the filing in the court of the petition, report, or list, which first brings the matter before the court. For the same purpose we may refer to *Dousman* v. *City of St. Paul,* 23

Minn. 394, 399, which was the case of a judgment for a local assessment, rendered upon proceedings in court similar to those under the general law for the collection of taxes, commenced in the same manner. The objection to the judgment was that the proceedings, prior to the delivery to the city treasurer of the warrant to collect, were void; but the court said: "If this claim of the plaintiff be well founded, it does not affect the validity of the judgment."

We conclude, therefore, that the legislature intended the proceeding provided for in section 70, and the following sections, to be an action in behalf of the state against each tract of land described in the list filed, the jurisdiction depending on the filing of the list, and not on the right to recover the tax and penalty in the list appearing against each tract to be the claim or cause of action on the part of the state against such tract; the judgment to determine the existence and validity of such claim or cause of action, and that it should be final and conclusive, except as in the statute provided. Of course, the legislature did not intend that a tax appearing on the list shall be enforced if not legally chargeable upon the land; nor does it intend, when providing for private actions, that an unlawful claim of a plaintiff shall be enforced. The general intention in providing for the action to enforce the tax is the same as in the other case,—to provide a mode to ascertain if the claim presented is lawful, and, if so, to enforce it. In each of these cases instances may occur in which unjust claims will be enforced. This will always be so in legal proceedings while men in their acts and judgments are liable to error. No scheme for prescribing, regulating, ascertaining, or enforcing rights ever was or ever will be devised that has not at times, or will not at times, operate unjustly. There is no rule of law,—no statute in the statute book,—however indispensable, however beneficial generally, that is not subject to this defect. The statutes for registration of deeds, of limitations, for collection of debts from non-resident debtors, for administering estates of deceased persons, for closing up the affairs of insolvents, or forfeiting corporations, for ascertaining and making compensation for property taken for public use, may be mentioned as examples of this.

We will close our consideration of this part of the case by quoting from the opinion of the supreme court of the United States in *De Treville* v. *Smalls*, 98 U. S. 517, 525 : "We are not unmindful of the numerous decisions of state courts which have construed away the plain meaning of statutes providing for the collection of taxes, disregarding the spirit, and often the letter, of the enactments, until, of late years, the astuteness of judicial refinement had rendered almost inoperative all legislative provisions for the sale of land for taxes." "There is no possible excuse for not enforcing such statutes, according to their letter and spirit."

We will now consider the objection that the mode of procedure provided by the statute is not "due process of law," which is based on two propositions : *First*, that, in the absence of a prior lien for a valid, unpaid tax, there is no *res* or thing brought within the jurisdiction of the court; *second*, notice by publication is not sufficient.

As to the first of these propositions, the counsel on the side of appellant, though agreeing that the action is one *in rem*, do not agree as to the *res* or thing which is the object of the action; one making the proposition—novel, if not ingenious—that the lien for the tax is the *res*,—the thing,—which must be brought within the jurisdiction of the court, and if there is no lien, there is no *res*,—no thing which can be brought within the jurisdiction. We need not consider that proposition further than to state it. Another claims that there is no seizure provided by the statute, unless through a valid lien for the tax; and all claiming, what is undoubtedly true, that, in a proceeding *in rem*, to give the court jurisdiction over the thing proceeded against, there must be a seizure, or something which is equivalent to one. The propositions would be equally true of an action to foreclose a mortgage, a mechanic's or other lien, or any other action where real estate is the object of the action, which, because of inability to make personal service of process, must proceed as a *quasi* action *in rem*.

Section 70 assumes that the filing of the list is the commencement of the action against the land, and, with the publication of the notice, gives the court jurisdiction over the land. No other act is regarded by the statute as equivalent to what is called "seizure;" no levy is

made, no process to attach is issued. The purpose and necessity of seizure is to hold the property under the jurisdiction and control of the court, so that it shall abide the judgment. In respect to movable property, which may be within reach to-day, and beyond it to-morrow, this end can be secured only by taking the property into the custody of the court; and, as to such property, an actual taking is probably necessary. But in respect to immovable property, within the territorial jurisdiction of the court, and which must, of necessity, remain within its reach and under its control, an actual seizure is not necessary. Constructive seizure is sufficient. "The method of seizure must be such as is required by state statutes." Waples, Proc. in Rem. § 49. To make a valid attachment of land, the officer (unless the statute so direct) need not go on the land, or near it, or see it, or do anything but return that he has attached it. *Taylor* v. *Mixter,* 11 Pick. 341; *Perrin* v. *Leverett,* 13 Mass. 128.

In *Boswell* v. *Otis,* 9 How. 336, 350, the court said: "The inquiry should be, have the requisites of the statute been complied with, so as to subject the property in controversy to the judgment of the court, and is such judgment limited to the property named in the bill?" The suit was for specific performance of a contract to convey real estate, and, being authorized on publication and without personal service, it was held to be substantially an action *in rem.*

In *Cooper* v. *Reynolds,* 10 Wall. 308, 317, the court said: "While the general rule in regard to jurisdiction *in rem* requires the actual seizure and possession of the *res* by the officer of the court, such jurisdiction may be acquired by acts which are of equivalent import, and which stand for, and represent, the dominion of the court over the thing, and, in effect, subject it to the control of the court."

And in *Heidritter* v. *Elizabeth Oil-cloth Co.,* 112 U. S. 294, (5 Sup. Ct. Rep. 135,) the court, after quoting the foregoing from *Cooper* v. *Reynolds,* continues: "This may be by the levy of a writ, or the mere bringing of a suit;" and "this, as we have seen, is ordinarily done by actual seizure, but may be done by the mere bringing of the suit in which the claim is sought to be enforced, which may, by law, be equivalent to a seizure, being the open and public exercise of dominion over it for the purposes of the suit." The court must be under-

stood to speak of immovable property, and of a suit in which the bill, complaint, or petition by which it is commenced describes the property and discloses the relief sought with respect to it.

Against these authorities it is vain to contend that it was not competent for the legislature to provide, as in section 70 it has provided, that the commencement of the action by filing the list, and the publication of the notice, shall give the court jurisdiction over the land.

The necessity of notice, and the kind of notice that will be sufficient, are shown in the decisions we will cite, being, in actions *in rem*, more or less connected with the matter of seizure. To meet the definition of due "process of law" applied to judicial proceedings, there must be notice, of some kind, of the proceeding. The kind of notice is for the legislature (within certain limits) to prescribe.

In *Matter of Empire City Bank*, 18 N. Y. 199, 215, Mr. Justice Denio said: "Where the legislature has prescribed a kind of notice by which it is reasonably probable that the party proceeded against will be apprised of what is going on against him, and an opportunity is afforded him to defend, I am of opinion that the courts have not the power to pronounce the proceeding illegal." This is undoubtedly correct, with the qualification that, where the action is a personal one, in order to justify a general judgment,—one that may be enforced against property of the defendant not subjected to the jurisdiction of the court in the action,—the notice must be personal.

*Pennoyer* v. *Neff*, 95 U. S. 714. In this case the line is clearly drawn between cases in which the notice must be personal and those in which it may be substituted or constructive, as by publication. The court said, (p. 727:) "Such service [substituted or constructive service] may answer in all actions which are substantially proceedings *in rem*. But where the entire object of the action is to determine the personal rights and obligations of the defendants,—that is, where the suit is merely *in personam*,—constructive service in this form, [by publication,] upon a non-resident, is ineffectual for any purpose;" and "substituted service by publication, or in any authorized form, may be sufficient to inform parties of the object of proceedings taken, where property is once brought under the control of the court by seizure, or some equivalent act."

In *Heidritter* v. *Elizabeth Oil-cloth Co.*, *supra*, was involved the validity of a judgment and sale of land foreclosing a mechanic's lien, in which there was no personal service on the owner defendant; the statute allowing, in such cases, service, as against non-residents, by posting and publication. The court quote our first quotation from *Pennoyer* v. *Neff*, and say: "The kind of service, and mode of service, could be material only with reference to the nature of the judgment. He [the defendant] could be bound personally only by his coming or being brought personally within the jurisdiction of the court. But the land might be bound without service of process upon the owner, in case where the only object of the proceeding was to enforce a claim against it specifically, of a nature to bind the title."

In *Cooper* v. *Reynolds*, *supra*, the court sustained a sale of real estate under a judgment in an action *in personam*, in which there was no personal service, but the land had been attached.

In *Wallace* v. *Brown*, 22 Ark. 118, (76 Am. Dec. 421,) the court sustained a decree confirming a tax sale taken upon default, and upon notice only by publication, the statute allowing such service.

In *Pritchard* v. *Madren*, 24 Kan. 486, the court sustained a judgment rendered on notice by publication, the statute allowing that mode of service.

In *Gage* v. *Parker*, 103 Ill. 528, the court sustained a judgment for a local assessment, the statute requiring service only by mailing to each owner known to the commissioners applying for the judgment, and by posting and publication.

*Francis* v. *Grote*, 14 Mo. App. 324, was a case of a tax judgment entered on notice by publication, as the statute provided. It was objected that the statute was unconstitutional because it did not provide for personal notice. The court said, (p. 330:) "It has never been held that any revenue law was unconstitutional on the ground that it made no provision for personal service on the owner of the land sold for taxes."

In *Dousman* v. *City of St. Paul*, 23 Minn. 394, 400, a judgment for a local assessment, rendered on notice by publication only, was sustained; this court saying: "That jurisdiction of the plaintiff was

acquired by constructive notice, without actual notice, is of no moment. The law authorizes constructive notice, and makes it sufficient." "In cases of this kind, as in very many others, constructive notice answers all the purposes of actual notice. That the plaintiff failed to receive actual notice, on account of his non-residence or absence from the state, or because, on account of the defendant's long delay, he was not expecting it, is not important. * * * The unfortunate consequences which would result from any other doctrine, as applicable to proceedings necessarily and usually summary in their nature, need not be particularly pointed out."

In *McCarrol* v. *Weeks*, 5 Hayw. (Tenn.) 246, where a tax judgment was assailed on the ground that the notice provided by statute was only constructive, the court said, (p. 254:) "Agreeably to the practice and necessities of government, where taxes are imposed on property, the proceedings to enforce payment must be *in rem*, and are analogous to such proceedings under the law of nations, where all persons are presumed to be parties. Many of the lands of our country are owned by persons abroad, on whom personal notice could not be served, and if it was requisite to serve notice on each resident, the public revenue would be swallowed up by the expenses attending its collection. No government of which we have any knowledge has adopted this method of proceeding."

We will close our citation of authorities on this point, which might be extended to an almost indefinite length, by referring to another tax-judgment case, to which it was objected that there had been only constructive notice. In *Eitel* v. *Foote*, 39 Cal. 439, the court said: "The power of the legislature to provide for constructive service of process has so often been exercised, and the validity of such service has so frequently been recognized, both directly and indirectly, by the courts of this state, as well as those of most of the states of the Union, that it may be regarded as beyond the reach of attack on constitutional grounds."

We are of opinion that none of the objections made on behalf of the appellant are well taken, and that the former decision of the court should be adhered to.

MITCHELL and DICKINSON, JJ., (*concurring.*) The opinion of the chief justice is so exhaustive as to leave nothing to be said, except that we concur. This case has been almost overwhelmed by the most voluminous briefs and arguments, but, like all questions of statutory construction, it comes down to a question of legislative intent; and whether we consider the general plan and scheme of this tax law as a whole, or its several provisions separately, we can find no escape from the conclusion that *delinquency* (including all that the term implies) is the very issue tendered in these proceedings, and upon which the judgment is conclusive; and that everything, whether payment of the tax, exemption of the property from taxation, illegality of the tax, or anything else which would show that the land was not delinquent in fact, was intended to be mere matter of defence. To give it any other construction would, as it seems to us, be an act of mere judicial legislation. Therefore, if the question were *res nova*, we would have no doubt of the correctness of the conclusion reached in the opinion. There is, however, another important consideration to which the chief justice has not alluded. We refer to the rule of *stare decisis*. The doctrine of the opinion is not, as many seem to suppose, new. To say nothing of other decisions of this court in which it is assumed or implied, there are at least two cases in which this court had previously decided this question. The decision in the case of *County of Aitkin* v. *Morrison*, 25 Minn. 295, rendered over eight years ago, rests entirely upon this construction of the statute. The precise point in principle involved in the present case was squarely decided between six and seven years ago in the case of *County of Chisago* v. *St. Paul & Duluth R. Co.*, 27 Minn. 109, (6 N. W. Rep. 454,) in which this court uses the following language: "It is the policy of the statute that every objection to the enforcement of the taxes appearing on the list filed should be litigated and decided in those proceedings. *That the land is exempt, or that the tax has been paid, is a defence which must be 'made to appear by answer and proof.'*" So far as we know, these decisions passed unchallenged, and elicited no adverse criticism from the bar, at least until after the filing of the first opinion in the present case; and, although four sessions of the legislature have been held since the decision of the last case referred

to, yet the statute as thus construed has been allowed to stand without amendment in this respect. This construction, having stood so long unquestioned, has become a rule of property, upon the faith of which real estate has been bought and sold and improved, and ought not now to be departed from.

This feature of the tax law now under consideration is, in our opinion, both harsh and dangerous; but the remedy is with the legislature, which makes the laws, and not with the courts, whose only power is to apply them.

VANDERBURGH, J., (*dissenting.*) I am constrained to dissent from the views of my brethren expressed in the exhaustive and learned discussion of the questions involved in this case, by the chief justice. I realize fully the ability and force of the reasoning, and the sincerity of the convictions which have led to the conclusions arrived at; but, with due respect, I think the particular sections of the statute relied upon to give the court jurisdiction are susceptible of a different construction, and one more in conformity with what must have been the underlying purpose and intention of the legislature, notwithstanding the existence of other apparently inconsistent provisions. The result arrived at in the majority opinion is in harmony with previous decisions of this court, and finds much support in the general course of legislation on the subject since the original act of 1874 authorizing judicial proceedings in tax cases. But in previous cases the jurisdictional question had never been fully argued or considered, and its gravity and importance, perhaps, never fully realized, until the reargument of this case; nor do I think the court should be prevented from re-examining and reconsidering its former decisions by the application of the rule of *stare decisis.* The importance of that rule to the stability of property rights and the public interests is not to be undervalued, and courts should be slow to depart from it; but where it is apparent that a wrong rule has been adopted, and that the public interests demand its reversal, the doctrine should not necessarily be held binding on the court. This court did not hesitate to adopt this course as respects mortgages by pre-emptors. In *McCue* v. *Smith,*

9 Minn. 237, (252,) they were held void, and the rule was subsequently followed until, in *Jones* v. *Tainter*, 15 Minn. 423, (512,) it was reversed, and such mortgages held valid.

Ample provisions exist in the statute for reimbursing tax purchasers and their assignees, where titles fail; and grantees of such purchasers, taking such titles, would hardly, in the exercise of ordinary prudence, fail to protect themselves by proper covenants, if an enhanced price were paid, because such titles are almost universally regarded with suspicion. Besides, in the case of exempt property, the nature of the title, or the character of the possession, would probably, in the majority of cases, be notice of the fact of exemption. We think no particular hardship need be apprehended from changing the rule adopted in the former decision in respect to exemption and payment, nor is the construction contended for necessary in order to test the validity of the exemption claimed for any class of lands held by corporations or others. The question could be tested equally well in independent proceedings against the officers, or suits against the purchasers, just as was the case before the law of 1874, or as if the legislature had expressly provided that in these proceedings payment and exemption should be jurisdictional. It is no more the auditor's duty now to place non-delinquent lands upon the list than it was under the statute as formerly existing. In either case it would be wholly unauthorized and contrary to law.

The case, as finally submitted, presents the question in respect to the ground and limits of the jurisdiction conferred upon the court by the statute in tax proceedings. The jurisdictional question is the fundamental one; all others touching the form of the judicial proceedings provided for are subordinate. As respects the enforced collection of taxes, then, does the statute confer upon the court jurisdiction generally over lands returned by the county auditor as delinquent, whether or not so in fact, and, in proceedings against such lands, to conclusively determine the question of delinquency, as well as others, as against all the world? or is the fact of delinquency the essential condition of jurisdiction, without which, as to any particular parcel, all the proceedings are *coram non judice?* The discussion

will naturally involve (*a*) the question of the jurisdiction of the court; (*b*) the remedy, or in what manner the tax judgment may be avoided in the case of non-delinquent lands.

1. In the whole range of judicial inquiry, perhaps, there is no subject which involves more difficult and intricate questions than that of the jurisdiction of courts. But, as we understand it, if, within the general scope of authority conferred upon it, a court is authorized to exercise its jurisdiction in a class or variety of cases, its decision, after hearing the parties, or an opportunity afforded them to be heard, upon the question whether a case calling for the exercise of jurisdiction exists or not, is protected from attack, except as a remedy may be afforded in the same proceeding, or as may be specially provided by statute. It is enough that the court has general jurisdiction of the subject-matter. *Roderigas* v. *East River Sav. Inst.*, 76 N. Y. 316. The position of the respondent is that the court in these tax proceedings is given jurisdiction generally, in all cases where the taxes are returned as delinquent by the auditor, to enforce the collection of the same, except in cases where it is made to appear in the same proceeding that they have been paid, or the lands are exempt; and that the grant of jurisdiction necessarily involves the power to determine the question of delinquency therein, and hence that the final judgment is conclusive upon that point as well as any other; while the contention of the appellant is that the fact of delinquency is the essential precedent condition to the exercise of any jurisdiction by the court over or as against any particular lot of land.

Under the statute, lands subject to taxation are "delinquent" on which the taxes remain unpaid after the first of June each year. The entire question of the jurisdiction of the court, which is a special and limited one, must be determined by an examination of the statute. It can extend only to such subjects, and is to be exercised strictly within such limits, as the statute provides. *Eastman* v. *Linn*, 26 Minn. 215, (2 N. W. Rep. 693.) *The power to proceed to enforce taxes against property must be upon express authority, and whatever jurisdiction or authority the court has in the premises it takes directly from the statute.* Oconto Co. v. *Jerrard*, 46 Wis. 317, 328.

The cases cited by respondent from the courts of other states are of little use in this discussion, because arising under statutes different from our own, and generally authorizing the purchaser at a tax or judicial sale to bring an action or proceeding to quiet his title, or foreclose all equities or claims of the owner, in courts exercising *their ordinary jurisdiction in that class of cases.* *Parker* v. *Overman,* 18 How. 137, and *Thomas* v. *Lawson,* 21 How. 331, relied on by respondent, arose under an Arkansas statute which provided a special proceeding by a purchaser of land at a sale by a sheriff or other officer, to quiet or confirm his title. It was a proceeding in chancery in which the court, in the exercise of its ordinary powers, determined questions of title to real estate present within its jurisdiction; and the court expressly say (18 How. 140) that "it is, in substance, a bill of peace." *Wallace* v. *Brown,* 22 Ark. 118, (76 Am. Dec. 421,) is, in reality, an authority in appellant's favor. The decree was obtained on the chancery side of the court upon default on behalf of the purchaser at a tax sale, and, being regular on its face, was held to be impervious to collateral attack. But it was emphatically declared that previous payment of the tax "vitiated the decree," and constituted sufficient ground for setting it aside in a direct proceeding.

So, the judgment in tax proceedings under our statute, which is given the effect of a judgment of a court of general jurisdiction, it is claimed, cannot be attacked in a collateral suit like this. But such judgments may, in any event, be assailed in a direct proceeding, on the ground that the auditor's return of a tax which has been discharged by payment is wholly unauthorized and void. This matter will also be further considered in its order.

Recurring again to the statute, section 105 provides that "taxes assessed upon real property shall be a lien thereon from and including the first day of May in the year in which they are levied, until the same are paid." Of course, when paid, the land is forever discharged therefrom, and a judgment subsequently entered to enforce the same tax can only be supported on the ground of estoppel, as in the case of other judgments. If delinquency is not the basis or essential fact of jurisdiction, and the question of payment is to be litigated and adjucated in the same proceeding, then the final judgment is conclusive

of that fact, as well as others, and the remedy is by review only. If it is jurisdictional, like the essential fact of service of process in personal actions, then the judgment, as in the latter class of cases, may be attacked directly by motion or action for want of jurisdiction, or on the ground of fraud or mistake, if not collaterally, under section 85 of the same chapter. Section 56 requires the county treasurer to give receipts to persons paying taxes, and to make a duplicate record thereof, to be filed with the auditor. By section 69 unpaid taxes become delinquent on the first day of June, each year. The treasurer is directed to return the tax-lists to the auditor, to compare the same with the duplicate receipts on file with him, and to make the proper correction upon the record, so as to make it conform to the truth. And it is also further provided that "*each tract or lot of real property against which the taxes remain unpaid shall be deemed delinquent,*" and thereupon a penalty of 10 per cent. is immediately added. Section 70 directs the auditor to file in the office of the clerk of the district court for the county "a list of the delinquent taxes upon real estate within his county, which list shall contain a description of each piece or parcel of land on which such taxes *shall be so delinquent,* * * * and shall verify such list by his affidavit that the same is a correct list of taxes delinquent, for the year or years therein appearing, upon real estate in said county."

The filing of the list is the initiation of the proceedings *in rem* in the district court against the lands therein described. Back of it, however, is the jurisdictional fact, lying at the foundation of the proceedings, that the taxes are unpaid, and the land delinquent. The statute contemplates an *accurate return*, and the list, properly verified, will, primarily, be presumed to be correct. The object of the judicial proceedings is not to try the fact whether the auditor has made a correct list, but to enforce the collection of *unpaid* taxes, and to determine the sufficiency of any objections that may be made, by answer, to the collection of *such taxes*, by reason of substantial omissions or irregularities which render such unpaid taxes (not the proceeding) void. The making of this record is no part of the judicial proceedings. But the court takes up the case upon the failure of the county officers to make collection just at the point where, under the

previous statute, they (the auditor and treasurer) proceeded to adver-
tise and sell, (Gen. St. 1866, c. 11, §§ 117–119 et seq.;) delinquency
in each case being the basis of the proceedings.

Care must be exercised to distinguish between the jurisdictional
fact of delinquency (the actual existence or continuance of the lien of
the state) and the assertion or evidence of it as shown by the list,
and also the assertion of a claim of indebtedness to the state, such
as, in a personal action, might be adjudged conclusive upon default.
It is obviously the object of the statute, in its present form, at least,
that lands actually delinquent, and none others, should be the subject
of these proceedings.    Delinquency is assumed through all the pro-
ceedings, and hence the court proceeds accordingly against each par-
cel of land on the list, but the actual validity of the judgment will
depend upon the ultimate fact.    In brief, it is the *fact* of delinquency
that gives the court jurisdiction, and the verified list or return is the
*evidence* of it upon which the court acts as the *basis* of its *proceedings*.
As to the subject-matter, the jurisdiction of the court, therefore, is
the same as that previously exercised by the county officers, and is
no more extensive.    It would be singular, indeed, if the legislature
had intended to make it greater.

In *St. Anthony Falls Water-Power Co.* v. *Greely*, 11 Minn. 225,
(321,) it was held where a city clerk was by special statute directed
to make and return to the county auditor a list of unpaid and delin-
quent taxes, with the lands on which taxes remained due and unpaid
on the first day of April, 1864, properly certified by himself and the
mayor to be a correct list of unpaid and delinquent taxes, that taxes
which, though unpaid, had never been duly demanded as required
by the city charter, and which fact was proved outside the records,
were not within the purview of the act, and were improperly returned
to the auditor, and, of course, gave him no authority to sell.    The
record, it was held, did not conclude a party in opposition to the fact,
nor did the statute making the deed *conclusive after one year*.    The
proceedings, it is true, were not judicial, but the case is an authority
on the subject of the extent of jurisdiction conferred by this act.    So,
lands not delinquent cannot lawfully be included in the auditor's re-
turn, and are not necessarily bound irrevocably by the proceedings.

But the auditor's return becomes a record in the proceeding. It is the proof upon which the court acts; just as in personal actions it is the fact of service that is jurisdictional, but the proof of it upon which the court proceeds; and if the affidavits of service, whether personal or by publication, are untrue, and there is no jurisdiction in fact, the defendant is not remediless, but the judgment may be summarily set aside, on his motion upon a proper showing. *Covert* v. *Clark*, 23 Minn. 539; *Johnson* v. *Coleman*, 23 Wis. 452. See *Stocking* v. *Hanson*, (*post*, p. 207;) *Heffner* v. *Gunz*, 29 Minn. 108, (12 N. W. Rep. 342;) *Fiske* v. *Anderson*, 33 Barb. 71.

The subject of probate jurisdiction will afford a familiar illustration in this case. Probate courts are given jurisdiction, not over estates generally, but over the estates of *deceased* persons. Should administration be granted upon the estate of a person living, the proceedings would be set aside or held invalid, on his application, for want of jurisdiction, however complete the record might be. *Stevenson* v. *Superior Court*, 62 Cal. 60, and cases.

It is, however, argued that by the language of section 69, viz., "the property remaining on the list shall be deemed delinquent," the legislature intended that the return, or the lands therein, should constitute the subject-matter of the jurisdiction of the court, without respect to the facts of the case lying behind it; that "the filing of the list is the commencement of an action against lands thereby alleged or claimed to be delinquent, for taxes alleged to be due, and that the state tenders to all the world the issue of delinquency." To this we are unable to agree. Similar language to that referred to is used in section 73, viz.: "When the last publication shall have been made, the notice shall be deemed to have been served, and the court to have acquired jurisdiction," etc. The notice will only be *deemed* finally to have been lawfully served, and the court to have obtained jurisdiction to proceed further, in case the provisions of law in respect to publication are complied with, as, for example, that a newspaper be properly designated. *Eastman* v. *Linn*, 26 Minn. 215, (2 N. W. Rep. 693.) So taking the record to be correct, and acting on the presumption that the officers have discharged their duty, the taxes disclosed by the record are "deemed delinquent."

Nor is the issue of delinquency tendered by the state in the action, or conclusively adjudicated upon default of any appearance of the land-owner. Considered as a complaint, the list tenders no such issue. It is assumed that the jurisdictional fact of delinquency must exist when the complaint is filed, and in this connection we may add that the state is bound by the notice of the fact of payment to its officers. It is foreign to its purpose in authorizing the tax proceedings, and a fraud upon the tax-payer, to proceed to collect and enforce taxes which have been paid. As these proceedings profess to relate only to delinquent taxes, a man who has paid his taxes is not bound to take notice of them. The law should therefore afford him relief against a judgment therein, notwithstanding the provisions allowing parties to come in and answer. *Breisch* v. *Coxe*, 81 Pa. St. 336, 348; *Wallace* v. *Brown, supra.* In proceedings *in rem,*—and these are confessedly such,—"jurisdiction over the subject-matter is a condition precedent to the acquisition of authority over the parties." Freem. Judgm. § 119. There must not only be notice to the parties which may be construed as affording an opportunity to appear and contest, but the case must be within the class over which the court is given jurisdiction. Failure to appear and answer pursuant to a published notice could not confer jurisdiction over the subject-matter. The expiration of the time to answer does not affect the question of such jurisdiction. Delinquency is a matter of jurisdiction, and not strictly matter of defence merely.

If, as respondent contends, delinquency was one of the issues tendered by the state, then, of course, the land-owner would be expected to answer in pursuance of the general notice, and it would appear singular and altogether unnecessary that the legislature should have added the special clause at the end of section 79 permitting the defences of payment and exemption. When filed, the list is made, by section 79, *prima facie evidence that all the provisions of law in relation to the assessment and levy of taxes have been complied with.* This is the issue, and *these are the matters confessed by failure to appear.* As before indicated, there is a separate provision for raising an issue of payment. This adds nothing to the grant of jurisdiction previously made. Parties who are not in default are not bound to watch

tax proceedings, and interpose answers setting up defences going to the jurisdiction over the subject-matter; but it is a wise provision of the statute to allow it as a summary way to clear the record where parties ascertain that their lands are wrongfully proceeded against. Where, however, a party appears and answers under this clause, setting up the special plea of payment, a finding upon the issue in his favor would only amount to a determination, in substance, that the court was without jurisdiction, and that there is no subject-matter to deal with. The mere form of the judgment, or manner of raising the objection, is not material. A jurisdictional fact in respect *to the subject-matter*, not apparent upon the record, may be raised and disposed of upon an answer as well as by motion. If such separate and preliminary issue were determined against the special plea, the result would be to confirm the validity of the return, and leave the court to proceed to adjudicate other questions as to the validity of an existing unpaid tax. But the result of the determination of that particular issue would not bind any one, or the interests of any one in the land, except the party appearing. Waples, Proc. in Rem. §§ 580, 581; *Cooper* v. *Reynolds*, 10 Wall. 308, 318; *Belleville Nail Co.* v. *People*, 98 Ill. 399. Because parties may thus come in, it does not follow that the question of delinquency is determined against them in the proceeding in default of an answer. The question remains unadjudicated, except that the presumption of verity attaches to the auditor's return as a part of the record, until it is impeached.

Under the former tax system it was specially provided that if the taxes charged on any lot of land were regularly paid, and such land erroneously returned delinquent, and sold, the sale was void. Gen. St. 1866, *c.* 11, § 62. But this was only declaratory of the rule already existing. Payment of the tax necessarily extinguishes the statutory power to sell. Cooley on Taxation, (2d Ed.) 450. So in these proceedings we think the fact of previous payment ought to be held to deprive the court of jurisdiction to proceed, and the only remaining question is the method of relief against a judgment which, if regular on its face, and based upon a properly verified return as evidence of jurisdiction, imports verity.

2. We have already suggested that the judgment is subject to be attacked by direct proceedings; as (a) by motion upon a summary application, particularly in clear cases, as where the party holds an unchallenged tax-receipt; or (b) by the proper action. *Manufacturers', etc., Bank* v. *Boyd,* 3 Denio, 257; *Johnson* v. *Coleman, supra;* Freem. Judgm. §§ 489, 495. But the court is agreed that the provisions of section 76, as amended, providing that "the same presumption in favor of the regularity and validity of said judgment shall be deemed to exist as in respect to judgments in civil actions in said court," are to be construed in connection with, and are limited by, the provisions of section 85, under which the presumption of title in the purchaser raised by the tax certificate may be overcome by proving that the court had no jurisdiction to render the judgment; and this may be shown by evidence outside the record of the judicial proceedings. *Eastman* v. *Linn,* 26 Minn. 215, (2 N. W. Rep. 693.)

The three-years limitation in the same section is inapplicable to the case of a judgment void for want of jurisdiction of the subject-matter. Whenever it is made to appear that lands condemned for the non-payment of taxes are not in fact delinquent, a case is disclosed which is not within the statute authorizing a judgment and sale, and is not included within the class of cases to which the limitation clause is applicable. As to such lands the judgment is void, and may be set aside. In the case of exempt property there is want of authority, *ab initio,* to levy taxes. Where the tax is paid, and the lien of the state discharged, there is thereafter an entire *absence of authority to proceed further.* Referring to such cases, the court, (Ryan, C. J.,) in *Oconto Co.* v. *Jerrard,* 46 Wis. 317, 328, say: "There is nothing for the statute of limitations to act upon," and, as respects the application of such a limitation law, distinguish between cases of the character just referred to and cases where the taxes are in themselves a just and equitable claim or charge against the land, but which may, if objected to seasonably, be adjudged void in consequence of irregularities or omissions in the course of the proceedings.

In *Breisch* v. *Coxe,* 81 Pa. St. 336, 348, it was held that payment of taxes took away all authority to make a subsequent sale therefor,

and that the owner was not required to take notice of the subsequent proceedings; that he could not be implicated in the consequence of an act where there is no power to bind him, "and that the owner is not bound to presume a sale, and follow up its consequences, within the five-years" limitation named in the statute.

But the right of the land-owner to be relieved from a tax judgment void because the land was previously discharged from the taxes may be placed upon the broad ground that, if he has fulfilled all his duty to the state, nothing which its agents, the county officers, can do without his consent can deprive him of his legal rights or remedies, or subordinate his equities to that of the tax purchaser. Cooley on Taxation, (2d Ed.) 553. Whether, in any particular case, his rights might be affected by undue delay after actual notice, as against subsequent purchasers in good faith, involves the application of principles and the discussion of questions not necessary to be considered in this case.

I think the complaint ought to be held sufficient, and the order sustaining the demurrer reversed.

BERRY, J., (*dissenting.*) My brother Vanderburgh has gone over the whole ground involved in this appeal so thoroughly that I do not deem it necessary to supplement his opinion with any prolonged argument, for the purpose of justifying my adherence to my former dissent in this case. I shall content myself with a few brief suggestions. In the first place, it seems to me that in this case, as in others, it is of capital importance to start right. If we start out with what seems to be a prominent idea in the majority opinion, viz., that a leading purpose of the present proceedings for the enforcement of taxes is to make tax titles perfect and unassailable, it will not, perhaps, be difficult to reach the conclusion that delinquency is not essential to jurisdiction. But if, on the other hand, we start out with what appears to me to be the only right idea, viz., that the single and controlling purpose of the tax law is, briefly stated, *to collect taxes,* and that the judicial and other machinery employed for this purpose is merely a means to an end, I think there is no serious or substantial difficulty in reaching the conclusion that delinquency

in fact is, to borrow the expressive phrase of the late Mr. Justice Cornell in *Eastman* v. *Linn*, 26 Minn. 215, (2 N. W. Rep. 693,) a "jurisdictional prerequisite" of a valid judgment. When a tax has been once paid, and is therefore *collected*, the whole purpose of the tax law is, as respects the land from which the tax was due, and upon which it was charged, completely accomplished. The owner of the land has done his full duty, and, as respects that tax, the state has not and cannot have any further claim upon him or his land.

Now, section 69 provides, by way of definition, that each tract or lot of real property, the taxes upon which "*remain unpaid*" on the first day of June, "*shall be deemed delinquent.*" Section 70 provides that the county auditor shall file in the office of the clerk of the district court "a list of the *delinquent* taxes upon real estate within his county, which list shall contain a description of each piece or parcel of land on which such taxes shall be so *delinquent;*" and that "the filing of *such* list shall have the force and effect of filing a complaint in an action by the county against each piece or parcel of land *therein described.*" Section 71 provides that the clerk shall deliver to the auditor "a copy of the list *so* filed," attaching thereto a notice stating that it is "the list of taxes and penalties on real estate for the county *remaining delinquent* on the first day of June." Section 73 provides that, when the last publication of the list is made, "the notice shall be deemed to have been served, and the court to have acquired full and complete jurisdiction to enforce, against each piece or parcel of land in said published list described, the taxes, accrued penalties, and costs upon it *then delinquent.*" Looking at these provisions with reference to the views of the purpose and scope of our tax law which I have before expressed, I find no difficulty in arriving at the conclusion that the jurisdiction conferred upon the district courts in tax proceedings was intended to be and is exclusively confined to cases in which taxes are in fact delinquent, and does not embrace any case in which taxes are not delinquent because they have been in fact paid.

I shall not dwell upon this further than to call attention to the words which I have italicized in my quotations from the statute, as respects other and subsequent provisions of the tax law, which, taken

alone, might seem inconsistent with this conclusion. I think they are to be used in subordination to those which I have quoted, and with reference to what I have stated to be the leading purpose and scope of the tax law. As to the proper significance of such other and subsequent provisions, I shall add nothing to what is very satisfactorily said by my brother Vanderburgh. Many cunning amendments and changes of the tax law have been made from time to time, but, in my opinion, none of them (whatever may have been the designs of their framers in that direction) have succeeded in essentially changing or effecting what I have indicated to be its sole purpose and scope. I have no hesitation in saying that, if the construction put upon the law by the majority of the court is correct, the law is monstrously unjust, and so much of it as furnishes any pretext for such construction ought to be immediately repealed. In this respect I agree with my brethren Vanderburgh, Mitchell, and Dickinson, though, as I understand his opinion, not with the chief justice. As I read his opinion, he regards the provisions giving jurisdiction, as he understands them, to render judgment against all lands, whether the taxes upon them have been paid or not, and whether they are exempt or not, as wise, and, in fact, necessary to an efficient tax procedure.

I have already exceeded the space which I intended to occupy, and will only add what I said, in substance, in my former dissenting opinion in the case, viz., that, as the construction given to the law by the majority of the court is not necessary, and works great injustice, it ought not, in my judgment, to prevail.